No. 14,666.

REGAL COAL CO. ET AL. *v.* JACKVICH.

(99 P. [2d] 196)

Decided February 5, 1940.

Mr. BYRON G. ROGERS, Attorney General, Mr. FRANK A. BRUNO, Assistant, Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, for plaintiffs in error.

Mr. CARL CLINE, for defendant in error.

*In Department.*

MR. JUSTICE YOUNG delivered the opinion of the court.

FERDINAND CERNICH came to his death by electrocution while in the employ of the Regal Coal Company at Lafayette, Colorado. The coal company carried its industrial compensation insurance with the State Compensation Insurance Fund. If deceased at the time of his death had any dependents within the intent and meaning of the Workmen's Compensation Act it is not disputed that they are entitled to compensation based on his maximum wages. Marget Jackvich, residing at Rock Springs, Wyoming, a sister of deceased, filed a claim for compensation based upon her alleged partial dependency upon deceased for support within the intent and meaning of the compensation act. The claim was denied by the commission on the ground that claimant had not established her dependency. In this subsequently instituted action the district court found all the issues in favor of claimant and set aside the findings and award of the commission as wholly unsupported by the evidence.

All the evidence in the case was adduced by the claimant, and in its findings and award the commission summarized her testimony as follows: "Marget Jackvich, sister of the decedent, has been married for thirty-seven years. Her husband is a miner, and is 60 years of age. She is the mother of one boy and five girls. She testifies that her son, Steve, twenty-eight years of age is not married and lives at her home. He earns approximately $1100.00 per year, and pays to her the sum of $25.00 per month that she maintains is for board and room. That her husband earns approximately $1000.00 per year, which he contributes to her, and that the deceased contributed approximately $500.00 within the year prior to

his accidental death. That her brother made these contributions in spite of the fact that for the past two years, the deceased had been off work because of an injury sustained in December 1936, and drawing compensation at the rate of $10.93 per week. The deceased had only been working a few days for the respondent employer when he met his death by electrocution. Marget Jackvich also testified that the money received from her husband, son, and brother was commingled and all expenses paid by her from the funds thus accumulated."

It is contended by claimant that her testimony was corroborated by that of certain other witnesses which was not considered by the commission. She further contends that a fair consideration of their testimony in connection with her own required the setting aside of the award rejecting her claim, as was done by the district court.

Witness Kruljac, a butcher and merchant of Rock Springs, Wyoming, testified he was the president of "certain international lodges," which he was not asked more particularly to identify, and that during two years that deceased was drawing compensation for an injury sustained in Wyoming during the year 1936, these lodges paid to him $1500.00 in insurance in addition to the compensation which he received because of his injury. This witness further testified that in April, 1934, he saw deceased give $200.00 to Mr. Jackvich saying, "I will leave this money for sister." He then was asked the question, "He said: 'Give the money to sister'?" which was answered in the affirmative. The witness also testified that on two occasions, not definitely fixed as to time, he had seen deceased take money from a cash register while he, the deceased, was in business in Wyoming, and that deceased said he intended giving it to his sister. Valentine Valter Cernich testified that he was a second cousin of deceased, and of course also of the claimant. During his direct examination he was interrogated, and answered, as follows: "Q. Are you aware of whether or

not the deceased, Ferdinand Cernich, gave money to his sister, Mrs. Jackvich? A. I know one time when he was over to my place in Longmont, he instructed me his sister would come for some money, and when she would come down I gave her $50.00. Q. Beside that can you tell whether he contributed to the family support? A. I couldn't say that, but he was always speaking for the good of her and always gave her money." On cross examination he fixed the time the $50.00 was paid as July preceding the month of September during which deceased came to his death.

We think the foregoing fairly states the testimony which claimant alleges was not considered and which she further alleges tends to corroborate her testimony that she was partially dependent upon deceased.

With a record before it disclosing testimony substantially as summarized by the commission in its findings and award, supplemented by the foregoing statement of the testimony claimed to have been overlooked and which it is asserted was pertinent to the issues involved, the commission in making its finding used the following language:

"The commission is of the opinion that claimant's testimony that one-half of her support was derived from her brother, and one-half from her husband is pure fiction. How or why the decedent, who did not even room or board at this sister's home, could or would contribute within $68.38 of his annual income to a sister with a husband and a son capable of supporting her was not even suggested. Neither was it shown that the alleged contributions were regular in point of time or amount, and therefore, a source of income upon which she or her family could depend for support. Claimant's testimony concerning the material facts of this case are so obviously false, as to require that her entire testimony must be disregarded.

"The Commission, therefore, finds that the deceased was not survived by any persons either wholly or par-

tially dependent upon him for support within a reasonable time of his death."

A consideration and determination of the question whether the commission, with such testimony before it, acted without or in excess of its powers in making its findings will dispose of the case. If the testimony on which claimant relied to establish dependency and on which the commission made a finding of no dependency was such that honest men fairly considering it might arrive at contrary conclusions then an issue of fact was thereby presented and the finding of the commission on that issue was binding on the district court in its subsequent hearing of the case, and binds us on review. In determining whether the testimony was of such character, certain established principles of law should be borne in mind: First, that dependency of a sister under section 332, chapter 97, '35 C. S. A., involves a question of fact. *Colorado Fuel and Iron Company v. Industrial Commission,* 90 Colo. 330, 9 P. (2d) 285. Second, that the commission is a fact-finding body and as such is the sole judge of the credibility of the witnesses. *United States Fidelity and Guaranty Company v. Industrial Commission,* 96 Colo. 571, 45 P. (2d) 895. In the latter opinion a large number of cases to the same effect are cited. Third, that even though the testimony of a witness as to certain facts may be uncontroverted by other direct testimony it does not follow that the facts testified to, as a matter of law, must be accepted as uncontroverted facts. *Ward v. Atkinson,* 22 Colo. App. 134, 123 Pac. 120; *Colorado Springs v. Coray,* 25 Colo. App. 460, 139 Pac. 1031; *White v. Industrial Commission,* 104 Colo. 372, 90 P. (2d) 960. It is clear that if a witness testifies to certain things, which, if they exist, are evidence of the ultimate fact sought to be established, and such testimony is controverted by the testimony of another or other witnesses who testify differently on the subject under investigation, a preliminary issue as to the credibility of the witnesses arises. In such cases the

court, if the trial be to the court, the jury, if it be to the jury, or, in the present case, the commission, must first pass upon the credibility of the witnesses to determine the true evidentiary facts. It is equally clear that testimony of a witness as evidence of the ultimate fact to be proved—in the instant case dependency upon the deceased—may be challenged by matters inherent in the testimony itself or the circumstances at the time it is given, or by the relationship of the witness to the matter to be determined. It would be a hopeless task to enumerate all of the matters inherent in or surrounding the giving of testimony or the various relationships of the witness to the issue that might be sufficient in law to raise a question of fact in cases where testimony is not disputed by other witnesses. In the instant case it is pertinent to observe that it is stated in the claim filed and verified, that this money was paid "every two weeks in the amounts of $20.00 and as high as $30.00;" that over a period of years these payments were said to have been delivered to claimant sometimes by deceased in person and at other times by persons who acted as his agents or messengers to make such deliveries. Notwithstanding that a case in which a married woman with a husband and grown unmarried son, both working, alleges dependency to the extent of fifty per cent upon a brother not living with her family, if not unique, at least is a strange one in the light of the experience of the generality of mankind; nevertheless only two witnesses other than claimant were brought forward to testify to the payment of any money to her at all. One of these was a distant relative of claimant and deceased, who said he was told by deceased if claimant came over to his place of business to give her $50.00, which he did; and the other, a storekeeper, says he saw deceased give $200.00 to claimant's husband for claimant in 1934 and that he heard deceased say on other occasions that he was going to give her money. It does not appear in either of these cases that the money given

her was not òwing to her or made as a special gift rather than as a contribution to her support. The fact that no other person who delivered money to her was called as a witness or even named by claimant as having knowledge of her receipt of money from time to time over so long a period presents rather a strange situation. Neither the husband nor any one of their grown daughters, who in the circumstances scarcely could be ignorant of payments of money to claimant at regular intervals in person or by agent for a period of years, if such were the fact, is brought forward to corroborate claimant's testimony. Deceased had been injured and was drawing an annual compensation for almost the entire two years preceding his death but slightly in excess of the $500.00 his sister alleged he paid her annually during that time for her support. Kruljac says he drew $1500.00 on insurance during that time other than his compensation. He did not live with his sister and was present at her home only a few times during the year preceding his death. If he contributed support money twice a month and did not transmit it by mail, and claimant said he did not, it would seem it must have been sent by agent, but none is brought forward or named. Claimant's husband was earning $1000.00 a year and her son, unmarried and living at home, an equal amount or a little more. The latter was paying $25.00 for his room and board. While $1300.00 is not a large amount for a family such as claimant's to lay out annually for expenses, it raises it above the class of those in great need and suggests the question whether a brother, himself the victim of an accident, would feel obligated to pay to the family practically his entire compensation allowance during the year preceding his death. In large measure claimant's testimony was such as could be refuted only by the brother whose voice was silenced by death.

Without attempting to lay down any fixed or definite rule for determining when it is proper to say that an

issue of fact is raised on the testimony of a witness not directly contradicted by that of another, we think this case is one in which, by reason of inferences that may be drawn from the testimony, the interest of the witness, and the conditions shown to exist, such an issue is raised on the testimony of claimant, although the latter was not contradicted directly by other witnesses. We are of the opinion that we should not hold, as a matter of law, that honest men fairly considering the evidence adduced in this proceeding could arrive at but one conclusion concerning it. This being the case, it follows that the finding of the commission that claimant was not dependent upon the deceased under the terms of the Workmen's Compensation Act was within the scope of its authority as a fact finding body. It was error for the court to hold that in so finding the commission acted without or in excess of its powers.

Judgment reversed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE KNOUS concur.