No. 15,248.

RAND *v.* INDUSTRIAL COMMISSION ET AL.
(132 P. [2d] 784)

Decided December 21, 1942.

Mr. FRANK C. WEST, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. ST. GEORGE GORDON, Assistant, Mr. LOUIS SCHIFF, for defendants in error.

*En Banc.*

MR. JUSTICE GOUDY delivered the opinion of the court.

THIS is a proceeding under the Workmen's Compensation Act, wherein plaintiff in error, who is the claimant, seeks the reversal of a judgment of the district court of the City and County of Denver, by which it affirmed an award of the Industrial Commission denying her claim for death benefits, the award being based upon a finding that the accident in which her husband, Edgar F. Rand, met his death November 30, 1940, did not arise out of and in the course of his employment.

For convenience, the parties will hereinafter be designated as follows: plaintiff in error Edith La Verne Rand, as claimant; her deceased husband Edgar F. Rand, as Rand; defendant in error Industrial Commission of Colorado and Pepper Packing and Provision Company, as the commission and the company, respectively.

The following facts are disclosed by the record:

Rand was employed by the company as a city meat salesman on a commission basis, his duties requiring him to call upon customers and sometimes to deliver goods sold, for which it was necessary to use an automobile, which he owned, kept repaired, lubricated and in running order, and for which the company made him an allowance of eight dollars per week. He was not required to keep any scheduled number of hours, as the company was concerned only with results, but he usually worked from 8 o'clock a.m. to 6 o'clock p.m. during the week except Saturdays, when he concluded his work at any time from 1:30 p.m. to 4 o'clock p.m., sometimes working on that day also until 6 p.m.

Saturday, November 30, 1940, Rand left the company's

downtown branch about 12:30 p.m., arriving at his home at West 55th avenue and Julian street about 1:30 p.m. The company officials did not expect him to return that day, and it is not the usual custom among meat salesmen to solicit business on Saturday afternoons. The company's stockyard plant is not open on Saturdays, and its downtown sales branch closes at 1:30 p.m. Upon Rand's arrival at home he inquired of claimant if there were any telephone calls for him, as he frequently received calls at home from customers, and was informed there were none. Nothing was said as to whether he was through work for the day, although he did not change his clothes, as was his custom when through working; and he left the impression with his wife that he still had business to attend to. About twenty minutes later he left the house in his car to drive his daughter and her friend to the Federal Theatre at West 38th avenue and Federal boulevard, where they arrived at about 2 p.m. No indication of drinking was noticed at home or on the way to the theatre. What he did for the next half hour is unknown.

Between 2:15 p.m. and 2:30 p.m. Rand telephoned to the operator of a filling station located on the corner of West 49th avenue and Federal boulevard, inquiring if he could get his car greased right away, and stating that he would be down in about ten minutes. At about 2:35 p.m. Rand was seen by a number of persons traveling north in his car between West 48th and West 50th avenues on Lowell boulevard, going pretty fast, and swerving out to pass at least one and perhaps two other cars. At West 50th avenue and Lowell boulevard his car collided with a southbound street car, which had just rounded the corner, and Rand sustained injuries which resulted in his death a few minutes later.

An autopsy was held which disclosed a percentage of alcohol in the brain tissue, sufficient, in the opinion of the autopsy physician, to have rendered Rand unfit to safely drive a car, although the physician doubted that

the amount could have caused intoxication within a half hour.

Rand left surviving and totally dependent upon him for support his widow, who is the claimant, and two minor daughters.

The sole question here presented is as to the legal effect of these facts and as to any reasonable inferences which may be drawn therefrom.

The referee of the commission entered an order denying compensation for the reason that the accident resulting in the death of Rand did not arise out of and in the course of his employment. The pertinent parts of this order which require consideration are:

"The question presented is whether or not this accident arose out of and within the course of Rand's employment. To resolve in favor of the claimant we must find that the decedent was within the course of his employment after 1:30 P.M., at which hour he repaired to his home and temporarily, at least, stepped out of the course of his employment. Having stepped out of the course of his employment, the burden of proof is upon the claimant to show how, when and where he again resumed his employment. This, the referee holds, she has failed to do.

"The respondent employer's plant at the stockyards is not open at all on Saturdays and its downtown sales branch is open until 1:30 P.M. Decedent's practice, which he appears to have followed on the day in question, was to come into the branch office about 11:30 A.M. on Saturday and contact any customers who may have called and to leave the office about an hour later to deliver any packages he might have. When he arrived home on November 30, he asked his wife if there were any telephone calls for him and was informed that there were none. His activities from then until 2 P.M. were clearly not within the scope of his employment. His next known intention was to have his car serviced. Even though it was necessary for him to use his car in his business and

was allowed $8.00 per week by his employer for the use thereof, it cannot be said that taking his car to a filling station to have it serviced was a part of his employment for the reason that the car was his own personal property and was used for other than business purposes. And for the further reason that decedent was not performing this task during ordinary working hours or during time for which he was paid by his employer.

"The referee, therefore, finds that the accident of November 30, 1940, which resulted in the death of Edgar F. Rand did not arise out of and within the course of his employment. In view of the above, it is unnecessary to consider whether or not the injury resulted from decedent's intoxication.

"It is, therefore, ordered: That claimant's claim for compensation and benefits by reason of the death of her husband on November 30, 1940, be and the same is hereby denied."

A petition for review was filed with the commission, which thereafter reviewed the evidence and entered its award affirming and adopting the award of the referee. Subsequently, a second petition for review of this award being filed, the commission thereafter again reviewed the evidence and entered its supplemental award, finding its previous award correct and affirming it as its final award. Complaint then was filed in the district court to vacate the award of the commission, and upon order of that court the cause was remanded to the commission "to determine whether under the proof the decedent was, at the time of the accident, on the way to a service station to have his automobile serviced, and if it so finds to make an award to claimant for the death as provided by law."

After further hearing, additional evidence being presented, the commission entered its second supplemental award, the pertinent parts thereof that need here be considered being:

"The question presented is whether or not this acci-

dent arose out of and in the course of Rand's employment.

"The Commission is of the opinion and so finds that it did not for the following reasons: The respondent employer's plant at the stockyards is not open at all on Saturday and its downtown sales branch is open until 1:30 P.M. Decedent's practice, which he appears to have followed on the day in question, was to come into the branch office about 11:30 A.M. on Saturday and contact any customers who may have called and to leave the office about an hour later to deliver any packages he might have.

"When he arrived home on November 30, 1940 he asked his wife if there were any telephone calls for him and was informed that there were none. His activities from then until 2 P.M. were clearly not within the scope of his employment.

"His next stated intention was to have his car serviced but the Commission finds that at the time of his injury such was not his purpose. The Commission arrived at this conclusion from the fact that Rand did not turn east on West 49th avenue and because of the high rate of speed at which he was traveling could not have intended to turn east at West 50th avenue. The most direct route to the filling station, which is located at West 49th and Federal boulevard, would have been to turn off of Lowell boulevard onto West 49th avenue. Apparently the decedent was on his way home which is five blocks north (the direction in which he was traveling) and one block east from the site of the accident.

"The Commission is, therefore, of the opinion that the decedent stepped from the course of his employment at or prior to 1:30 P.M. on November 30, 1940 and that he did not thereafter return to his employment prior to his death.

"The Commission, therefore, finds that the accident on November 30, 1940 which resulted in the death of

Edgar F. Rand did not arise out of and in the course of his employment.

"It is, therefore, ordered: That claimant's claim for compensation and benefits by reason of the death of her husband, Edgar F. Rand, on November 30, 1940 be and the same is hereby denied."

Thus, it appears that evidence was introduced before a referee of the commission, and an order entered thereon denying compensation; that this evidence was twice reviewed by the commission on petitions for review, and awards entered denying compensation; that further evidence was taken by the commission upon order of the district court to determine a question raised by plaintiff in error on this review, that is: Was decedent, at the time of the accident, on the way to a service station to have his car serviced? — all followed by findings and awards of the commission adverse to claimant.

In her specification of points claimant urges that the findings of the commission are not supported by the evidence, and, the evidence being uncontradicted that Rand was performing services arising out of and in the course of his employment, the district court should have vacated the commission's award and ordered the entry of a proper award of compensation.

In *White v. Industrial Commission,* 104 Colo. 372, 90 P. (2d) 960, we held that though all the evidence produced may come from the claimant, and, viewed in its most favorable light, would support an award for him, if it justifies adverse inferences, which the commission clearly draws, a contrary award will be upheld on review. In *State Compensation Insurance Fund v. Russell,* 105 Colo. 274, 96 P. (2d) 846, we announced the holding that if there was sufficient competent testimony before the commission from which proper deductions could be made and inferences drawn which support the finding that decedent's accidental death did not arise out of or in the course of his employment, the fact that there was some testimony indicating the contrary did

not justify the trial court in setting aside the finding of the commission. In *Regal Coal Co. v. Jackvich,* 105 Colo. 479, 99 P. (2d) 196, and *Industrial Commission v. Day,* 107 Colo. 332, 11í P. (2d) 1061, we stated that if the testimony in a workmen's compensation case upon which the claimant relies is such that honest men, fairly considering it, may arrive at contrary conclusions, an issue of fact is thereby presented, and the finding of the Industrial Commission upon such issue is binding upon the courts.

As a fact-finding body, the commission could determine from the evidence the facts as to what Rand was doing at the time of his accident, and could decide, as an inference logically to be drawn from those facts, that Rand had abandoned the intention to have his car serviced, and at the time of the accident was not acting in the course of his employment. It will be noticed that in the order of the referee, adopted by the commission as its final award, it is stated: " * * * it cannot be said that taking his car to a filling station to have it serviced was a part of his employment for the reason that the car was his own personal property and was used for other than business purposes."

We find no error which necessitates a reversal.

The judgment is affirmed.