Industrial Commission et al. *v.* Parra.

No. 15,287.

Industrial Commission et al. *v.* Lazar.

(137 P. [2d] 405)

Decided April 26, 1943.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Henry E. Zarlengo, Assistant, for plaintiffs in error.

Mr. Philip Hornbein, for defendants in error.

*En Banc.*

Mr. Justice Bakke delivered the opinion of the court.

These two cases, because of similarity in fact and law,

were consolidated for trial below and are, for the same reason, submitted to us for disposition in a single opinion. They arise under the Colorado Employment Security Act (S.L. 1941, c. 224), particularly section 5 thereof which deals with disqualification for benefits. The claimants in both cases are coal miners who had for years been employed as such in the northern Colorado fields, one at Frederick and the other at Erie. Work was discontinued in these mines in the spring of 1942, and claim was made for compensation under the act. On May 11, 1942, claimants were offered similar work at Hayden, 175 miles away on the other side of the continental divide, but they insisted the work was not suitable and declined to accept, whereupon the claims deputy denied their claim for compensation, holding that the work at Hayden was suitable and that because of their refusal they became disqualified for benefits under the statute. On appeal to the referee, the decision was reversed. The department appealed in turn to the Industrial Commission which refused compensation. Finally the matter reached the district court which set aside the findings and award of the commission and ordered the allowance of compensation. It is for the purpose of reviewing and reversing the decision of the trial courts that the Industrial Commission has brought the cases here on error.

A detailed statement of the facts is unnecessary because they are undisputed. In addition to what has been said it may be noted that both claimants were family men and had their homes at Erie and Frederick, respectively, and both felt that having to leave their homes and families to enter employment at such a distance from their places of residence made the work unsuitable.

Section 5 (c) (1) of the statute reads: "In determining whether or not any work is suitable for an individual, the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemploy-

ment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence, shall be considered."

In its findings the commission posed the question at issue to be, "Whether or not the jobs offered these claimants were suitable?" Its decision was as follows:

"The Commission, in considering the question raised in this case, is of the opinion that the degree of risk involved to the health, safety, and morals of the claimants, in being referred to the jobs offered, was no greater than that to which they are customarily subjected. The Commission has also taken into consideration the claimants' physical fitness and prior training, their experience and prior earnings, the length of their unemployment and their prospects of securing work in their customary occupations, as well as the distance of available work from their residence, and comes to the *conclusion* that the *only* question regarding the jobs offered that could possibly render them unsuitable is the distance of the available work from the claimants' residences.

"In deciding whether or not *this factor* is such as to render the jobs unsuitable, the Commission is of the opinion that the fact that our country is at war must be taken into consideration. Also, the fact that there is a shortage of coal and a shortage of manpower to mine the coal needed in the war effort must be taken into account. It is essential to the welfare of our nation that full use be made of every possible man-hour. To permit jobs essential to the war effort to remain unfilled while fully qualified men remain idle seems contrary to good public policy. To permit men under these circumstances to draw benefits is certainly not within the intent of the provisions of the Employment Security Act of Colorado.

"The Commission therefore finds that the claimants did fail without good cause to apply for available suitable work when so directed by the Department of Em-

ployment Security and the United States Employment Service."

It is at once obvious from a reading of this decision that the commission felt that the only matter involved as rendering the job unsuitable, "is the distance of the available work from the claimants' residences." It is to be noted that the sole reason assigned by the commission for its holding is the fact that our country is at war, and that because of the shortage of coal and manpower as a result thereof, "To permit jobs essential to the war effort to remain unfilled while fully qualified men remain idle seems contrary to good public policy." "Under these circumstances" the decision concludes that the men are not entitled to draw benefits.

While we can understand the patriotic motive that prompted these expressions, the commission was without legal authority to place the decisive factor in the case on this basis. Its only source of authority is in the statute; consequently, we agree with the trial court.

Judgments affirmed.

Mr. Justice Knous specially concurs.

Mr. Justice Burke, Mr. Justice Jackson and Mr. Justice Goudy dissent.

Mr. Justice Knous specially concurring.

While it may be that the Industrial Commission would be without authority under the Employment Security Act to adjudge the suitability of the employment offered one unemployed solely upon the basis of what the commission feels should be the patriotic duty of the workman involved, I am satisfied from the records that such was neither the intent nor action of the commission in the cases at bar. Upon this basis I am unable to concur in the ground expressed in the court's opinion for affirming the judgments of the district court.

I believe that section 5 (c) (1) of the act, quoted in

the opinion of the court, confers upon the commission the broad power to consider prevailing economic conditions, whether they arise from the dislocations of war or from peace time depressions or trends, in deciding whether, in a given case, the offered employment is suitable and so determinative of the right to unemployment benefits. In the situation here involved, due to the burden imposed on the transportation systems of the country by the war, the national and state governments, in an effort to stabilize the flow of traffic thereon, in the spring and summer of 1942, made a wide appeal to users of coal to buy and store such, rather than, as ordinarily, to wait until the fall or winter months to fill their bins. As a result of this program and the cooperation of the public therewith, an abnormal demand for summer production of coal in the Hayden field arose, and with it came stable peak employment periods for the miners. To complicate the situation, as a result of the flow of manpower to the armed services and war industries, there also was a shortage of labor in the coal mining industry. I am satisfied that these circumstances, legitimate of consideration, rather than any unwarranted effort to impose patriotism on the claimants, prompted the comments on the war situation contained in the commission's decision.

Notwithstanding the right of the commission to notice such factors, I am convinced, however, that any considerations arising therefrom are so overwhelmed by other unchallenged evidence adduced as to make the decision of the commission arbitrary and unjust. The record discloses: (1) That for many years Lazar's place of residence has been at Frederick, Colorado, and Parra's at Erie; both are family men, Lazar with several children; both own their own home and Lazar maintains an extensive family garden in connection with his. (2) For more than a decade the basic employment of both has been in the Frederick-Erie coal fields where both have established seniority rights in particular mines which

they would lose should they not report for work on the opening of such mines. Except for a few shifts worked elsewhere in 1941, Lazar in the past thirteen years has not been employed outside of the Frederick field. (3) Because of the precise war emergencies causing peak employment at Hayden, the mines in the home fields of claimants would open early in July, 1942. (4) The offered employment at Hayden, some 200 miles away, was not tendered until the fore part of May, 1942, and the first hearings before the deputy was not held until the latter part of that month. (5) The type of mining carried on in the Hayden field differed materially from that prevailing in the Erie-Frederick fields, to which the claimants were accustomed. (6) There were no accommodations for families available at Hayden, as a result of which claimants, if they accepted employment there, would have to pay their board at Hayden and also maintain separate family establishments at Erie and Frederick. (7) Both had worked at Hayden in 1941 at which time their earnings averaged approximately $2.00 per day less than the pay received in their home field. Both claimants testified that the wages received by them at Hayden were not sufficient to board themselves and maintain their families at home. Lazar testified that because of his unfamiliarity with the type of mining followed at Hayden he was unable to work efficiently there in any event and admittedly Parra did not have sufficient funds with which to defray transportation charges to Hayden.

It is to be observed that the "stop-gap" employment offered until the opening of the mines in claimants' own field, to which of necessity they would be obliged to return, would not exceed a few weeks at most.

Considering the inevitable dislocation in the claimants' finances which would result from the payment of two-way traveling expenses and the separate maintenance of their families, in the event the short employment at Hayden had been accepted by them, and the

further circumstances detailed above, I am statisfied that under the intent of the statute involved, the men were within their rights in refusing the offered employment and that the commission acted arbitrarily in ordering the withholding of unemployment benefits from them because of such refusal.

MR. JUSTICE GOUDY dissenting.

It seems to me that the basic questions here are those of fact. The Industrial Commission considered the evidence and concluded that the employment offered was suitable. The majority opinion and the specially concurring opinion of Mr. Justice Knous seem to me to be based upon a review of the facts and a conclusion drawn therefrom by the majority which differs from that of the commission. The result reached by the majority also was the judgment of the district court. In view of our long line of decisions, refusing to invade the field of the fact-finding body, this judgment, in my opinion, should be reversed. We said in *Regal Coal Co. v. Jackvich,* 105 Colo. 479, 99 P. (2d) 196: "If the testimony * * * was such that honest men fairly considering it might arrive at contrary conclusions then an issue of fact was thereby presented and the finding of the commission on that issue was binding on the district court in its subsequent hearing of the case, and binds us on review." This doctrine was reiterated in *Industrial Commission v. Day,* 107 Colo. 332, 111 P. (2d) 1061, and should not now be repudiated. I therefore dissent.

MR. JUSTICE BURKE AND MR. JUSTICE JACKSON concur in this dissenting opinion.