IN THE MATTER OF: JOHN W. CANTRELL, 312 NORTH HOFFMAN ROAD, DALLAS, NORTH CAROLINA 28034, S. S. NO. 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, COMMISSION DOCKET NO. 6752, APPELLEE AND BURLINGTON INDUSTRIES, BOX 325, PEACH ORCHARD ROAD, BELMONT, NORTH CAROLINA 28012, ATTENTION: BOB LONG AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, POST OFFICE BOX 25903, RALEIGH, NORTH CAROLINA 27611, APPELLANT

No. 7927SC519

(Filed 5 February 1980)

**Master and Servant § 108.1—** refusal of truck driver to make trip—wilful misconduct—disqualification from receiving unemployment compensation

An unemployment compensation claimant's deliberate and unjustifiable refusal to report to work when the employer has the right to insist on the employee's presence and when the claimant knows that his refusal would cause logistical problems for the employer constitutes wilful misconduct sufficient to

disqualify a claimant from receiving benefits; therefore, claimant truck driver's refusal to make a trip which his employer had a right to ask of him, either in the belief that the employer's rotation rules for assigning drivers no longer applied to him or in protest for employer conduct in assigning him to make a trip with a black driver which he believed discriminated against him, constituted wilful misconduct which disqualified him from receiving unemployment insurance benefits.

APPEAL by respondent Employment Security Commission (ESC) from *Burroughs, Judge.* Judgment entered 23 January 1979 in Superior Court, GASTON County. Heard in the Court of Appeals 10 January 1980.

Claimant was employed as a truck driver with Burlington Industries for approximately nineteen months prior to his discharge on 29 September 1977. The next day claimant filed a claim for unemployment compensation benefits. After a hearing before the Claims Deputy of the ESC the Claims Deputy determined that claimant was disqualified from receiving benefits under G.S. 96-14(2) because he was discharged for misconduct in connection with his work at Burlington Industries. After appealing this decision, a hearing was held before the Appeals Deputy of the ESC at which claimant was represented by counsel. The Appeals Deputy affirmed the determination of the Claims Deputy. The decision of the Appeals Deputy was upheld by the Deputy Commissioner of the ESC.

Claimant appealed to the Superior Court of Gaston County. The court held that the Deputy Commissioner's findings were all based upon competent and substantial evidence contained in the record. However, the court additionally held that, "as a matter of law . . . the facts as found by the Employment Security Commission do not support the conclusion that the claimant was discharged for misconduct connected with his work as that phrase is used in G.S. 96-14(2) in that the facts as found do not show that the claimant's misconduct was misconduct connected with his work." From the court's judgment holding claimant eligible to receive benefits, respondent ESC appeals.

*No brief for claimant appellee.*

*V. Henry Gransee, Jr., for respondent appellant Employment Security Commission of North Carolina.*

WELLS, Judge.

We agree with the court below that the ESC's findings of fact are supported by competent evidence in the record. We are therefore bound by these findings. *In re Thomas*, 281 N.C. 598, 189 S.E. 2d 245 (1972). The findings present an accurate and concise description of the fact situation presented in this case, and we quote them in their entirety:

1. The claim series now under consideration was begun effective September 25, 1977, and had been continued through October 22, 1977, at the time of the adjudicator's conference.

2. The claimant last worked for Burlington Industires, Belmont, North Carolina, as a truck driver on September 28, 1977.

3. The claimant had been working for this employer for approximately nineteen months at the time of his discharge. During that time his work had been satisfactory and he had never been warned or otherwise reprimanded about any facet of his conduct.

4. Approximately one week before the claimant's last day of work, he was involved in a situation in which two other drivers, a black man and a white man, were scheduled to make a trip to Mississippi together. The claimant understood that because the black man refused to ride with the white driver, the claimant was called in to make the trip with the other white driver. The claimant made this trip as a favor to the supervisor involved. He did not discuss this action with any other supervisory personnel at the time.

5. As the claimant knew, assignment of drivers to trucks was generally done through a complex rotation system established by the employer. On his last day of work the claimant was told that according to this rotation system he was scheduled to make a long trip with another driver. This other driver was black. The claimant, remembering the situation of the week before, and not wanting to make this trip for personal reasons, refused to go. He assumed that a favor similar to the one he had done earlier would be done for him and another driver substituted in his place.

6. The claimant believed this favor should be done for him because it had been done for a black driver the previous week, and it was the claimant's feeling that not to do it for him would constitute racial discrimination on the employer's part. He also believed the situation the week before showed that the rotation rules no longer applied. He did not explain to any supervisory personnel why he would not make this particular trip.

7. The claimant's refusal to make this trip was reported to the employer's terminal manager, who discussed it with the claimant. At the conclusion of this conversation the claimant was discharged by the terminal manager for his refusal to make the trip. The terminal manager did not go through the system of verbal and written reprimands customarily utilized by the employer before an employee is terminated.

Where a claimant is discharged for "misconduct connected with his work" the claimant becomes disqualified from receiving benefits. G.S. 96-14(2). Thus, where the claimant is discharged because he willingly and knowingly violates a reasonable rule of his employer, the claimant is disqualified. *In re Stutts*, 245 N.C. 405, 95 S.E. 2d 919 (1957) (claimant disqualified for misconduct for violating employer's rule against making changes in machines operated by employees); *In re Collingsworth*, 17 N.C. App. 340, 194 S.E. 2d 210 (1973) (claimant disqualified for misconduct for refusing to follow employer's rule requiring employees to wear ear protective devices).

In *Collingsworth*, we adopted the Wisconsin definition of "misconduct":

***[T]he term "misconduct" [in connection with one's work] is limited to conduct evincing such wilfull or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.***

17 N.C. App. at 343-344, 194 S.E. 2d at 212-213. In the *Stutts* and *Collingsworth* cases the reviewing bodies were solely concerned with the reasonableness of the employer's rule. However, the present action concerns not merely the reasonableness of the *employer's* request that claimant drive the truck on the night in question, but the reasonableness of *claimant's* refusal to drive. This issue has not previously been before the appellate courts of our State.

In this regard, we find the rule stated by the Supreme Court of Pennsylvania to be the most persuasive:

> [W]e must evaluate both the reasonableness of the employer's request in light of all the circumstances, and the employee's reasons for noncompliance. The employee's behavior cannot fall within "wilfull misconduct" if it was justifiable or reasonable under the circumstances, since it cannot then be considered to be in wilfull disregard of conduct the employer "has a right to expect." In other words, if there was "good cause" for the employee's action, it cannot be charged as wilfull misconduct. [Citations omitted.]

*McLean v. Board of Review*, 476 Pa. 617, 620, 383 A. 2d 533, 535 (1978). In *McLean*, a truck driver was discharged for refusing to follow his employer's directive that claimant drive a particular truck. The evidence showed that both the employer and claimant knew that the truck was not in good repair. The Court reversed the lower court's judgment upholding the Board of Review's denial of benefits on grounds of claimant's misconduct. In holding that claimant was eligible for benefits, the Pennsylvania Supreme Court stated that claimant's refusal to drive the truck was reasonable and justifiable in light of all of the circumstances — the truck's unsafe condition.

Similarly, a Florida appellate court has remanded a case in which a claimant was denied benefits after he was discharged for refusing to follow the employer's order to drive a truck on a long haul. *Smallwood v. Dept. of Commerce*, 350 So. 2d 121 (Fla. App. 1977). The Court held that since claimant had declined to drive the truck on a long-distance trip because he had cataract problems which distorted his peripheral vision, the Department of Commerce was required to make findings as to whether claimant's refusal was justified.

In the present action, the ESC found that claimant had re-fused to make a trip which his employer had a right to ask of him, either in the belief that the employer's rotation rules no longer applied to him or in protest for employer conduct which he be-lieved discriminated against him. The ESC concluded that, in light of the other less disruptive alternatives for protest that were open to claimant, claimant's refusal to make the trip was not justified. While the record shows that claimant did not know for certain his refusal would result in discharge, he did know that his employer controlled the rotation, and could insist that he take the trip in question. Thus, his refusal to make the trip for either racial or unidentified personal reasons, when insisted upon by his employer, was not reasonable or justified.

A claimant's deliberate and unjustifiable refusal to report to work, when the employer has the right to insist on the employee's presence and when the claimant knows that his refusal would cause logistical problems for the employer, con-stitutes misconduct sufficient to disqualify claimant from receiv-ing benefits. *See, Urso v. Board of Review,* 39 Pa. Commw. Ct. 593, 396 A. 2d 70 (1979). We reverse the judgment of the Superior Court and reinstate the decision of the ESC disqualifying claim-ant from receiving unemployment insurance benefits.

Reversed.

Judges HEDRICK and MARTIN (Robert M.) concur.