IN THE MATTER OF: JESSIE B. WILLIAMS, APPELLANT v. SCM PROCTOR
    SILEX AND EMPLOYMENT SECURITY COMMISSION OF NORTH
    CAROLINA, APPELLEES

No. 8212SC222

(Filed 1 February 1983)

**Master and Servant § 108.1— disqualification for unemployment benefits—discharge for misconduct**

An employee's alteration of her production records, resulting in overpayment to the employee, constituted willful or wanton disregard of the employer's interest, in disregard of standards of behavior which the employer had a right to expect of the employee and supported the conclusion that claimant's discharge was occasioned by "misconduct connected with [her] work," and her disqualification for benefits was accordingly appropriate. G.S. 96-14(2).

APPEAL by claimant from *Brewer, Judge.* Judgment entered 28 October 1981 in Superior Court, HOKE County. Heard in the Court of Appeals 13 January 1983.

*Lumbee River Legal Services, Inc., by Phillip Wright, for claimant appellant.*

*V. Henry Gransee, Jr., for defendant appellee Employment Security Commission.*

*No brief filed for defendant appellee SCM Proctor Silex.*

WHICHARD, Judge.

Claimant appeals from a judgment affirming a decision by defendant Employment Security Commission that she is disqualified for unemployment compensation benefits because she was discharged from employment for misconduct connected with her work. She contends the pertinent findings are not supported by competent evidence, and that the conclusion of law that she was discharged for misconduct connected with her work was therefore erroneous. We affirm.

The Commission made the following pertinent findings of fact:

2. Claimant was discharged from this job for reporting an inaccurate number of parts run on her machine on the last shift that she worked. The claimant's machine had a counter attached to it which counted the number of parts the machine produced. It was possible for employees to alter the number on the counter. On the claimant's last day of work,

her counter recorded 4,272 parts. The claimant's supervisor counted the parts that had been run on the machine after the claimant's shift finished and recorded 1,663 parts. Thus the claimant's count was 2,600 parts too high. The claimant was given an opportunity to explain the discrepancy between actual parts and the number showing on the counter to the employer. She did not offer a satisfactory explanation.

3. The claimant has stated that some of the parts she had run were put in boxes partially filled by the previous shift. The employer's representative checked the boxes done by the shift prior to the claimant's and discovered them to have been full when the claimant's shift started. The discrepancy in the count caused the claimant to be overpaid by approximately $31.00.

These findings are supported by the following competent evidence:

Claimant's supervisor testified that his supervisor instructed him to assist in a count of claimant's parts. He saw the counting and personally assisted with it. Claimant's machine had been "checked out" by an electrician both before and after she started work.

The count of claimant's parts revealed that "they were off." This meant that claimant "could not have run the parts that she said she had run, that she had put down on her time card." Claimant had "put down 4,272 pieces on her card." The count showed 1,663 parts to be "her day's production."

The assistant personnel manager for defendant company also testified that claimant had said she ran 4,272 parts, while the maximum number of parts the company could account for was 1,663. He stated: "This was a difference of 2,609 parts. If we had let this go it would have resulted in something like a $31.00 overpayment." He indicated that the boxes from the previous shift were full, so the only boxes claimant "had to put elements in were empty . . . ."

This witness further testified that the machines could be "tripped" so that the counter would count without actually having parts, and that there had been questions regarding claimant's count over a period of a year. The company had been watching

the counts of claimant and others very closely. When it had questioned claimant before, she always had a response which left the company with some uncertainty. On this occasion, however, the company "could not come up with any excuses."

Because the foregoing evidence supports the above findings, the findings are conclusive on appeal. G.S. 96-15(i); *In re Thomas*, 281 N.C. 598, 604, 189 S.E. 2d 245, 248 (1972); *In re Abernathy*, 259 N.C. 190, 194, 130 S.E. 2d 292, 296 (1963); *Yelverton v. Furniture Industries*, 51 N.C. App. 215, 218, 275 S.E. 2d 553, 555 (1981); *In re Cantrell*, 44 N.C. App. 718, 720, 263 S.E. 2d 1, 2 (1980). *See also* G.S. 96-4(m). The sole remaining question is whether these findings sustain the conclusion that claimant was disqualified for benefits by virtue of G.S. 96-14, which provides, in pertinent part:

> An individual shall be disqualified for benefits:
>
> . . . .
>
> (2) . . . if it is determined by the Commission that such individual is, at the time such claim is filed, unemployed because he was discharged for misconduct connected with his work.

G.S. 96-14 (Supp. 1981).

In determining whether facts found constitute "misconduct" within the intent of G.S. 96-14(2), this Court has quoted with approval the following definition:

> * * * [T]he term 'misconduct' [in connection with one's work] is limited to conduct evincing such wilful or wanton disregard of an employer's interest[s] as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. * * *

*In re Collingsworth*, 17 N.C. App. 340, 343-44, 194 S.E. 2d 210, 212-13 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259-60, 296 N.W. 636, 640 (1941) ). *See also Yelverton v. Furniture*

*Industries, supra*, 51 N.C. App. at 218-19, 275 S.E. 2d at 555. Our Supreme Court has, at least implicitly, approved this definition. *See Intercraft Industries Corp. v. Morrison*, 305 N.C. 373, 375, 289 S.E. 2d 357, 359 (1982).

That an employee's alteration of her production records, resulting in overpayment to the employee, constitutes wilful or wanton disregard of the employer's interest, in disregard of standards of behavior which the employer has the right to expect of the employee, can scarcely be gainsaid. The findings therefore support the conclusion that claimant's discharge was occasioned by "misconduct connected with [her] work," and her disqualification for benefits was accordingly appropriate.

Affirmed.

Judges ARNOLD and HILL concur.