ERICK UMSTEAD, PLAINTIFF v. EMPLOYMENT SECURITY COMMISSION OF
    NORTH CAROLINA AND NORTH CAROLINA DEPARTMENT OF
    AGRICULTURE, DEFENDANTS

No. 8410SC1242

(Filed 2 July 1985)

**Master and Servant § 108.1— unemployment compensation—employee not guilty
of misconduct**

> The refusal of an employee to go to his supervisor's office immediately to
> discuss a field trip did not constitute misconduct within the meaning of G.S.
> 96-14(2) sufficient to disqualify the employee from receiving unemployment
> compensation benefits when he was dismissed for insubordination where the
> employee told his supervisor that he would come to his office in an hour, and
> where the supervisor admitted that he had very little information about the
> field trip to convey to the employee, that there was no urgent need for an im-
> mediate meeting, and that he could have conveyed the information by
> telephone.

APPEAL by defendants from *Barnette, Judge.* Judgment
entered 18 July 1984 in Superior Court, WAKE County. Heard in
the Court of Appeals 17 May 1985.

*Attorney General Thornburg, by Assistant Attorney General
Thomas G. Meacham, Jr., for defendant appellant North Carolina
Department of Agriculture.*

*Donald R. Teeter, Staff Attorney, for defendant appellant
Employment Security Commission of North Carolina.*

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Don-
nell Van Noppen, III for plaintiff appellee.*

BECTON, Judge.

On 25 January 1984 defendant-appellant, North Carolina
Employment Security Commission (Commission), disqualified the
claimant-appellee, Erick Umstead, from receiving unemployment
insurance benefits after it concluded that he was discharged by
defendant-appellant, the North Carolina Department of Agricul-
ture, for misconduct connected with his work. On appeal, the
Wake County Superior Court reversed the decision of the Com-
mission and directed the Commission to proceed with payments
to Erick Umstead of unemployment insurance benefits. The de-

fendants appeal to this Court and present the following questions for review.

I. Did the Superior Court err in concluding that plaintiff-appellee's conduct did not rise to the level of culpability required for a disqualification of unemployment benefits based upon 'misconduct' within the meaning of North Carolina General Statute 96-14(2)?

II. Did the Superior Court violate the statutory standard of review contained in North Carolina General Statute 96-15(i) and thus err in reversing the decision of the Employment Security Commission under Docket No. 83(G)4649 and in directing the Commission to proceed with payment of plaintiff-appellee's unemployment insurance benefits?

Believing that Umstead's actions did not evince such wrongful intent, wilfulness, wantonness, or deliberate misconduct as to disqualify him completely from unemployment insurance benefits as a matter of law, we affirm and find it unnecessary to discuss the standard of review issue.

I

On 13 July 1983, Erick Umstead was dismissed from his employment allegedly for insubordination and misconduct. Prior to his dismissal, the quality of Mr. Umstead's work was never in question, and he had at no time during his employment with the Department of Agriculture received any oral or written warnings concerning his performance. However, in the weeks preceding his discharge, Mr. Umstead had filed an intra-departmental grievance concerning John Hunter, his immediate supervisor, but had received no response to that grievance.

On the afternoon prior to his discharge, Erick Umstead, upon request, went to John Hunter's office to discuss the scheduling of a field trip which Mr. Umstead was to take two or three days later. Shortly thereafter, John Hunter summoned Mr. Umstead again to his office. Because John Hunter had in recent weeks repeatedly summoned Mr. Umstead to his office, for what Mr. Umstead considered to be trivial matters which could easily have been conveyed by telephone, Mr. Umstead stated that he was tired of walking back and forth to the office, and that he was a human being, by which he was implying that he "was not [Mr.

Hunter's] puppy dog that he could whistle for every two or three minutes." Mr. Hunter then apologized.

What occurred on the date of the discharge is set forth in finding of fact number 2 by the Commission. We include relevant portions of that finding below:

> 2. On the morning of July 13, 1983 [Hunter], instructed [Umstead] to come to his . . . office immediately . . . to discuss the final details of an upcoming field trip. . . . [Hunter] instructed [Umstead] to come immediately to his office . . . after [Hunter] had first called [Umstead] by phone at approximately 8:23 a.m. on July 13, 1983. . . . [Umstead] advised [Hunter] in that phone conversation that he would be able to come . . . in about an hour's time whereupon [Hunter] informed [Umstead] that he had 30 minutes to come. . . . [Umstead] replied that he would need at least an hour to go over some papers on his desk before reporting. . . . [Hunter] repeated his request. . . . [Umstead] responded by indicating that he thought he would need an hour whereupon [Hunter] proceeded to [Umstead's] office and in person instructed [Umstead] to come to his . . . office *immediately*. The distance between [Umstead's] and [Hunter's] office was 35 feet. [Umstead] did not comply because he had been on vacation the week of July 4 through July 8, 1983 and wanted to go over some papers on his desk. [Umstead] had returned from his vacation on July 11, 1983.

Significantly, Mr. Hunter admitted that he had very little in the way of information regarding the field trip to convey; that there was no urgent need for an immediate meeting; and that he could have conveyed the information by telephone. Nevertheless, Erick Umstead was dismissed.

N.C. Gen. Stat. Sec. 96-14(2) (Supp. 1983) states that an individual shall be disqualified from receiving unemployment benefits if "such individual is . . . unemployed because he was discharged for misconduct connected with his work," and then defines "misconduct" as follows:

> conduct evincing such wilful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has

the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent, or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to his employer.

G.S. Sec. 96-14(2) (Supp. 1983). Of course, the burden is on the employer to show circumstances which disqualify the claimant.

Citing *In re Cantrell*, 44 N.C. App. 718, 263 S.E. 2d 1 (1980), for the proposition that a refusal of a work assignment constitutes misconduct sufficient to disqualify a claimant from receiving unemployment benefits, the defendant employer in this case sought to carry its burden by characterizing Mr. Umstead's actions as a "refusal of a work assignment." We find *Cantrell* distinguishable. In *Cantrell*, a truck driver deliberately and unjustifiably refused to report to work when he knew that his refusal would cause logistical problems for the employer. The *Cantrell* Court held:

A claimant's deliberate and unjustifiable refusal to report to work, when the employer has a right to insist on the employee's presence and when the claimant knows that his refusal would cause logistical problems for the employer, constitutes misconduct sufficient to disqualify claimant from receiving benefits.

44 N.C. App. at 723, 263 S.E. 2d at 4. In this case, there were no logistical problems sufficient to constitute misconduct under the statute, caused by Umstead. Equally important, we find no refusal to report to work or to perform an assigned task. Considering Hunter's apology the day before Umstead's discharge and Umstead's statement that he would come to Hunter's office, this case devolves to a dispute between a supervisor and an employee about how fast the employee should move. We have already noted Hunter's admission that there was very little by way of information that he had to convey to Umstead, that there was no urgent need for an immediate meeting, and that he could have conveyed the information by telephone.

Defendant also relies on *In re Hagan*, 57 N.C. App. 363, 291 S.E. 2d 308 (1982) and *Yelverton v. Kemp Furniture Industries, Inc.*, 51 N.C. App. 215, 275 S.E. 2d 553 (1981). Those cases are

also factually distinguishable. *Hagan* involved a discharge based on gross insolence when an employee called his supervisor a "God-damned liar." Yelverton was discharged after he threatened a fellow employee with serious bodily harm, left his assigned work area to harass a fellow employee, and picked up a wooden post in the course of the argument with the fellow employee.

Considering the facts in this case, we find *In re Miller,* 62 N.C. App. 729, 303 S.E. 2d 411, *disc. rev. denied,* 309 N.C. 321, 307 S.E. 2d 165 (1983), controlling. Miller "refuse[d] to assume an additional, permanent work assignment because she did not agree with her supervisor's decision that she had time to perform the additional task." 62 N.C. App. at 731, 303 S.E. 2d at 412. This Court held that Miller's refusal was not misconduct as defined in G.S. Sec. 96-14(2) (Supp. 1983), noting a distinction between an employer's right to discharge an employee and the Commission's right to deny unemployment benefits based on the conduct that led to the discharge. Specifically, the *Miller* Court said:

> The issue here is not whether the employer had the right to assign this duty to claimant, or whether claimant had the right to refuse to do the task, but is whether claimant's behavior rises to the level of misconduct within the statute. It does not follow from the right to discharge an employee for his or her refusal to assume additional job responsibilities that the employee by refusing was wilfully or wantonly disregarding the employer's interest. To extend the definition of misconduct in such an expansive fashion, as appellants would have it, would be to abandon questions of wrongful intent, wilfulness, wantonness, or deliberate misbehavior.

*Id.* at 731-32, 303 S.E. 2d at 413. Considering this statement in *Miller* and the *Miller* Court's suggestion that an unaggravated refusal of a work assignment is not misconduct within the meaning of the Employment Security Act, we are compelled to find that the employer failed to carry its burden of showing that Umstead's conduct rose to the level of culpability required for a finding of "misconduct" within the meaning of the statute.

For the above reasons, the decision of the Wake County Superior Court directing the Commission to pay Erick Umstead unemployment insurance benefits is

Affirmed.

Judges PHILLIPS and EAGLES concur.