ARTIE S. BARNES v. THE SINGER COMPANY AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA

No. 375A88

(Filed 2 March 1989)

**Master and Servant § 108— unemployment compensation—plant moved to more distant site—voluntary leaving of job**

Plaintiff in an unemployment compensation case left her work involuntarily where plaintiff commuted daily with her brother-in-law forty-four miles round trip from her home to the Singer plant in Lenoir, plaintiff had an outstanding work record, plaintiff did not own a motor vehicle and was not licensed to operate a motor vehicle, defendant Singer decided to remove its plant for business reasons eleven miles further from plaintiff's home, plaintiff worked through the last day the plant was at the original location, and plaintiff thereafter had no transportation to work because her brother-in-law worked for another company and could not drive her the additional eleven miles. An employee does not leave work voluntarily when the termination is caused by events beyond the employee's control or when the acts of the employer cause the termination.

Justice MEYER dissenting.

APPEAL by plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 90 N.C. App. 659, 369 S.E. 2d 646 (1988), which affirmed a judgment entered by

*Rousseau, J.*, at the 27 April 1987 session of Superior Court, WILKES County, affirming the decision of the Employment Security Commission denying plaintiff's claim for unemployment compensation benefits. Heard in the Supreme Court 15 November 1988.

*Legal Services of the Blue Ridge, by Louise Ashmore, and Richard Tarrier for plaintiff-appellant.*

*T. S. Whitaker, Chief Counsel, and James A. Haney, Staff Attorney, for Employment Security Commission of North Carolina, defendant-appellee.*

MARTIN, Justice.

The question on this appeal is whether plaintiff is entitled to unemployment compensation. We conclude that she is and, therefore, reverse the decision of the Court of Appeals.

The evidence is basically undisputed. It shows that plaintiff had been employed by the Singer Company for more than twelve years. Although she commuted daily with her brother-in-law forty-four miles round trip from her home in Moravian Falls to the Singer plant in Lenoir, plaintiff had an outstanding work record with Singer. Plaintiff did not own a motor vehicle and was not licensed to operate a motor vehicle. After twelve years on the job, she was earning $5.85 per hour.

For business reasons Singer decided to remove its plant to Whitlock, eleven miles farther from Moravian Falls, making plaintiff's daily commute sixty-six miles. Plaintiff worked through 25 July 1986, the last day the plant was at the Lenoir location. Thereafter plaintiff had no transportation to work because her brother-in-law worked for another company in Lenoir and could not drive her the additional eleven miles to the Singer plant at Whitlock. Although plaintiff tried to secure other transportation to the new plant, she was unable to do so. Plaintiff did not work for Singer after the plant was moved.

Upon successive reviews the superior court and the Court of Appeals affirmed the Commission's denial of benefits to plaintiff.

No party contends that the claimant is not eligible for benefits pursuant to N.C.G.S. § 96-13. The battleground of this

case is whether the claimant is disqualified for benefits under N.C.G.S. § 96-14(1).

The issues before us are whether plaintiff voluntarily quit her job with Singer and, if so, whether she did so with good cause attributable to her employer, Singer. N.C.G.S. § 96-14(1) (1988). At the threshold we note that N.C.G.S. § 96-14(1A), defining what constitutes a voluntary leaving, was effective 28 June 1988 and is not applicable to this appeal. 1987 N.C. Sess. Laws (Reg. Sess., 1988) ch. 999, §§ 4, 5.

The test in this jurisdiction for disqualification from unemployment benefits has two prongs: did the employee leave work voluntarily, and if so, did she do so without good cause attributable to the employer. *In re Poteat v. Employment Security Comm.*, 319 N.C. 201, 353 S.E. 2d 219 (1987); N.C.G.S. § 96-14(1) (1988).

It is elementary that the controlling principle in statutory interpretation is that the statute must be given the meaning the legislature intended. *In re Watson*, 273 N.C. 629, 161 S.E. 2d 1 (1968). Where the legislature, as here, has enacted within the statute itself a guide to its interpretation, that guide is to be considered by the courts in the construction of the act. *Id.* The General Assembly has enacted the following guide to the interpretation of chapter 96 of the General Statutes:

> As a guide to the interpretation and application of this Chapter, the public policy of this State is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief

assistance. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this State require the enactment of this measure, under the police powers of the State, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

N.C.G.S. § 96-2 (1988).

Under this guidance, the statute must be construed to provide benefits to one who becomes involuntarily unemployed, who is physically able to work, available for work at suitable employment, and who, although actively seeking work, is unable to find such employment through no fault of her own. *In re Watson*, 273 N.C. 629, 161 S.E. 2d 1. Disqualification for benefits under the statute must be strictly construed in favor of the claimant. *Id.* The employer has the burden to show that the claimant is disqualified from receiving benefits. *Intercraft Industries Corp. v. Morrison*, 305 N.C. 373, 289 S.E. 2d 357 (1982). This Court must determine whether the law was properly applied to the facts. *Id.*

We turn first to the issue of whether plaintiff voluntarily left her employment with Singer. "Voluntary" means "[u]nconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself. . . . [r]esulting from free choice," Black's Law Dictionary 1413 (5th ed. 1979), "[a]rising from one's own free will," The American Heritage Dictionary 1436 (1980).

We hold that plaintiff left her work involuntarily. In ruling to the contrary, the Commission misapplied the law to the facts. An employee does not leave work voluntarily when the termination is caused by events beyond the employee's control or when the acts of the employer caused the termination. *In re Poteat v. Employment Security Comm.*, 319 N.C. 201, 353 S.E. 2d 219. Here the acts of the employer in removing the plant eleven miles to Whitlock caused plaintiff to be unable to continue her employment. Singer, by moving its plant, caused plaintiff's commuting distance to be increased fifty percent and in effect destroyed plaintiff's ability to go from her home to the job site. The moving of the plant was beyond the plaintiff's control. Her leaving work was in response to the removal of the plant by Singer and not an act of her own free will. Thus, the external motivating factor

causing the termination of plaintiff's employment was not of her own doing but done by Singer for its own benefit. All the evidence was to the effect that plaintiff wanted to continue to work for Singer but, despite her best efforts, could not physically or economically do so.

The policy of our state is that the compulsory reserves required by the statute "be used for the benefit of persons unemployed through no fault of their own." N.C.G.S. § 96-2. Plaintiff is such a person. The employer has failed to carry its burden under the law that plaintiff is disqualified from receiving benefits.

Other jurisdictions have reached the same result in analogous cases. *E.g., Guillory v. Office of Employment Sec.*, 525 So. 2d 1197 (La. App. 1988) (employee forced to travel more than fifty miles round trip after employer relocated plant had "good and legal" cause for leaving work); *Ross v. Rutledge*, 338 S.E. 2d 178 (W.Va. 1985) (employer's removal of work site an additional distance of 19.8 miles constituted substantial unilateral change in conditions of employment creating compelling reasons for claimant's terminating employment); *Bingham v. Am Screw Products*, 398 Mich. 546, 248 N.W. 2d 537 (1976) (where Kentucky worker left Michigan job because of inadequate housing, he was not later disqualified for unemployment benefits when he declined job offer from the Michigan employer because the job was too far from his Kentucky residence); *Matter of Smith*, 267 A.D. 468, 46 N.Y.S. 2d 774 (1944) (claimant entitled to benefits when her homeworker's certificate not renewed and she had no transportation to factory thirteen miles away); *Industrial Com. v. Para*, 111 Colo. 69, 137 P. 2d 405 (1943) (miners entitled to unemployment benefits when mine closed by employer and work offered at another site 175 miles away).

Having resolved this appeal upon the "voluntariness" prong of the test to determine disqualification for unemployment benefits, we do not find it necessary to discuss the second prong of "good cause attributable to the employer." The decision of the Court of Appeals is reversed and this cause is remanded to that court for remand to the Employment Security Commission for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Justice MEYER, dissenting.

I am unable to agree with the majority's statement that "[t]he employer has the burden to show that the claimant is disqualified from recovering benefits." The statement comes from *Intercraft Industries Corp. v. Morrison*, 305 N.C. 373, 376, 289 S.E. 2d 357, 359 (1982), a 4 to 3 opinion which cites as its authority a 1954 decision in the Pennsylvania intermediate court of appeals, *Kelleher Unempl. Compensation Case*, 175 Pa. Super. 261, 104 A. 2d 171 (1954). The same Pennsylvania court, in a case decided subsequently, seriously criticized the decision in *Kelleher* and in fact held that "[t]here is no burden upon the employer to establish ineligibility." *Gagliardi Unempl. Compensation Case*, 186 Pa. Super. 142, 153, 141 A. 2d 410, 416 (1958). The court explained in *Gagliardi* the intent of its earlier language in *Kelleher:*

> In *Kelleher Unemployment Compensation Case*, it was said that the burden is upon the employer to show circumstances which would bring a claimant under the condemnation of the disqualifying provisions of the Unemployment Compensation Act. This is true only in the sense that without evidence to the contrary, it is to be assumed that the disqualifying provisions are not applicable. There is no burden upon the employer to establish ineligibility.

*Id.* (citation omitted).

In another case decided by the same court in the same year, the court said:

> [Claimant] argues that the employer has the burden of rebutting the presumption that the employe is entitled to benefits, relying on *Kelleher Unemployment Compensation Case*, 175 Pa. Superior Ct. 261, 104 A. 2d 171. However, that case was criticized in *Gagliardi Unemployment Compensation Case*, 186 Pa. Superior Ct. 142, 143 A. 2d 410, wherein Judge Woodside said: "There is no burden on the employer to establish ineligibility". Rather, it is the duty of the unemployment compensation authorities to fairly develop all the relevant facts.

*Davis Unempl. Compensation Case*, 187 Pa. Super. 116, 118, 144 A. 2d 452, 454 (1958) (citation omitted).

The Pennsylvania Superior Court which decided this case apparently no longer hears appeals in unemployment compensation cases, and the appellate jurisdiction in such cases has been transferred to the Commonwealth Court of Pennsylvania. Several cases more recently decided by the Commonwealth Court of Pennsylvania are instructive. In *Lee v. Unempl. Comp. Bd. of Review*, 42 Pa. Commw. 461, 401 A. 2d 12 (1979), the claimant was held to have voluntarily quit her job when she did not return to work after the employer relocated its plant a distance of eleven miles (the same distance as in the case at bar). In *McCann v. Unempl. Comp. Bd. of Review*, 35 Pa. Commw. 628, 386 A. 2d 1086 (1978), the court affirmed a decision disqualifying a claimant who was held to have voluntarily quit his job rather than commute thirty-six miles to a new job site after the employer relocated.

A few decisions by our Court of Appeals have held, as does the majority in this case, that the burden is on the employer to show that the claimant is disqualified to recover benefits. *See, e.g., McGaha v. Nancy's Styling Salon*, 90 N.C. App. 214, 368 S.E. 2d 49, *disc. rev. denied*, 323 N.C. 174, 373 S.E. 2d 110 (1988); *Umstead v. Employment Security Commission*, 75 N.C. App. 538, 331 S.E. 2d 218, *disc. rev. denied*, 314 N.C. 675, 336 S.E. 2d 853 (1985).

In my opinion, there is no burden on the employer to prove that an employee is disqualified to receive benefits, nor should there be. It makes little sense to cast the burden on the employer to prove a negative. The burden should be upon the party who is in the best position to prove the matter in question. Here, it is the claimant who can best prove the crucial fact, not yet established in this case, that transportation to the new plant site is, in a practical sense, unavailable to her. It is impractical to place upon the employer the burden of showing, for instance, what efforts the claimant has made to find someone else with whom to ride; or that the claimant does not have, and is practically unable to obtain, the financial resources to pay someone to take her back and forth to work; or that she cannot buy a car; or that she cannot obtain a driver's license.

It is only infrequently that justice tolerates an uneven playing field for parties to a legal controversy. A rule which tilts the scales in favor of either the claimant or the employer was never

intended by our legislature when it enacted the Unemployment Compensation Act. The fairer and therefore better rule was enunciated by the Pennsylvania court in *Gagliardi Unempl. Compensation Case*, 186 Pa. Super. 142, 153, 141 A. 2d 410, 416, as follows:

> It is the duty of the employer and the employe to present the relevant facts to the unemployment compensation officials truthfully and accurately, and then it is for those officials to determine the eligibility of the claimant. It is the duty of the board to develop all the relevant facts, regardless of whether or not such facts are presented voluntarily by the claimant and the employer . . . .

Such should be the rule in this state, and this Court should announce it to be so.

Neither before the Appeals Referee nor the Commission did the claimant argue that she had quit her job involuntarily (the basis upon which the majority has decided the case). Instead, claimant argued that she quit work with good cause attributable to the employer. The focus of the hearing in this case seems to have been whether alternative transportation to the new work place was reasonably available to the claimant. The facts established at the hearing before the Commission do not permit the claimant to recover under the facts of this case. The Commission made no finding on the crucial question of whether transportation was unavailable to the claimant. This is not at all surprising, as it has not been established, for instance, that the claimant has made reasonable efforts to find another ride, that claimant is unable to hire her brother-in-law (or someone else) to drive her to and from the new plant location, that she is unable to obtain a driver's license, or that she cannot buy a car. The failure to establish such facts means that, at least at this point, it has not been established that the claimant is unable, in a practical sense, to reasonably continue her work at the new work place, which is only eleven more miles distant than the old work place.

I vote to affirm the Court of Appeals. As an alternative, I would remand this case to the Commission to the end that it make proper findings as to whether other means of transportation either were or were not reasonably available to the claimant.

Justice MITCHELL joins in this dissenting opinion.