COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, O'Brien and Senior Judge Clements
Argued at Alexandria, Virginia

RONALD L. BORDEN

v.        Record No. 1406-16-4

VIRGINIA EMPLOYMENT COMMISSION AND
 FAIRFAX COUNTY

MEMORANDUM OPINION* BY
JUDGE ROSSIE D. ALSTON, JR.
MAY 9, 2017

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

Ronald L. Borden, *pro se*.

Elizabeth B. Peay, Assistant Attorney General (Mark R. Herring,
Attorney General; John W. Daniel, II, Deputy Attorney General;
Kristina Perry Alexander, Senior Assistant Attorney General &
Section Chief, on brief), for appellee Virginia Employment
Commission.

No brief or argument for appellee Fairfax County.

Ronald L. Borden (Borden) appeals an order from the Circuit Court of Fairfax County

denying him unemployment benefits because the trial court found that he voluntarily quit his job

without cause.  On appeal, Borden contends that the trial court erred when it determined that he

was not entitled to receive unemployment benefits because he was actually discharged from

work for misconduct.  We disagree.

BACKGROUND

Borden was employed by the Department of Public Works for Fairfax County from

September 15, 2008, to June 12, 2015.  Throughout his employment, Borden received several

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

warnings about unprofessional behavior directed towards supervisors and co-workers. The oral warnings Borden received ultimately included counseling regarding a loud altercation with a co-worker around August 21, 2012; counseling on disruptive behavior that occurred around January 17, 2013; and counseling around May 24, 2013, regarding an inappropriate comment in the hiring process and disrespectful behavior towards his supervisor. Borden's written reprimands included one dated October 16, 2013, for unprofessional behavior and conduct; a one-day suspension without pay on November 8, 2013, for failure to comply with regulations of personal behavior and conduct; and another written reprimand for unprofessional behavior on December 12, 2014. Borden did not file a grievance for any of these warnings. Under the governing policy, a grievance allows an employee to ask for a review of a reprimand by his employer.

Borden did however, file a grievance regarding a July 23, 2013 written reprimand for unprofessional behavior and conduct. The written warning was ultimately upheld by the trial court in 2014.

On November 18, 2014, Borden filed an incident report against a supervisor, Bryan Polick, who talked to Borden about changing the data on a project. When Borden refused, Polick shut the door to the lab where Borden worked, slammed his hand down on the counter, and told Borden he should do as he was told. Risk management investigated the incident and handled it through the disciplinary process, and ultimately Polick maintained his supervisory capacity over the lab.

In May 2015, Borden learned that another employee, Sam Farag, complained to a supervisor about the way Borden talked to him. Borden's employer initiated an investigation into the employee's complaints, and talked to Borden about the allegations. Borden confronted the employee about filing a complaint, yelling at him and following him throughout their office.

As a result of this behavior, Borden's employer issued him a notice of proposed five-day suspension on June 11, 2015. However, this suspension without pay was never imposed.

Borden resigned from his position on June 12, 2015. Borden stated, at a hearing before the Virginia Employment Commission: "I had been contemplating [leaving] for some time. I made my supervisor aware of it." Borden also stated that he believed his employer's decision to propose a five-day suspension on June 11, 2015, was in retaliation for Borden's previous complaints.

The Virginia Employment Commission issued a decision on February 17, 2016, holding that Borden was disqualified from receiving unemployment compensation benefits effective June 28, 2015, due to voluntarily quitting work without good cause. On July 29, 2016, the trial court entered an order affirming the Virginia Employment Commission's decision. This appeal followed.

ANALYSIS[1]

Borden essentially argues that the trial court erred when it affirmed the Commission's decision finding that Borden was not due unemployment compensation because he voluntarily quit his job without good cause. We disagree.

Determining whether an employee voluntarily quit without good cause is a mixed question of law and fact reviewable on appeal. Snyder v. Virginia Empl. Comm'n, 23 Va. App. 484, 490, 477 S.E.2d 785, 788 (1996). Code § 60.2-625(A) states that: "the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be

---

[1] While this opinion focuses predominantly on Borden's assignment of error, Borden's filing with this Court was replete with procedural rule violations. Specifically, Borden's opening brief violated Rule 5A:20 in several ways: (1) it did not include an exact reference to the page(s) of the transcript, written statement, record, or appendix where each assignment of error was preserved in the trial court; (2) it did not include a clear and concise statement of the facts relating to his assignment of error; and (3) it did not provide a standard of review.

conclusive, and the jurisdiction of the court shall be confined to questions of law." When "the General Assembly has acquiesced in the [C]ommission's construction of the statute, such construction is entitled to great weight with the courts." Shuler v. Virginia Empl. Comm'n, 9 Va. App. 147, 150, 384 S.E.2d 122, 124 (1989) (quoting Branch v. Virginia Empl. Comm'n, 219 Va. 609, 612, 249 S.E.2d 180, 183 (1978)).

Code § 60.2-618(1) provides that an individual is disqualified from benefits upon leaving his employment "if the Commission finds such individual is unemployed because he left work voluntarily without good cause." This Court has established that the employer bears the burden of proving that the claimant left work voluntarily, and is thus disqualified from benefits. Shuler, 9 Va. App. at 150, 384 S.E.2d at 124. The term voluntary means "[u]nconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself . . . [r]esulting from free choice." Id. at 150-51, 384 S.E.2d at 124 (quoting Barnes v. Singer Co., 376 S.E.2d 756, 758 (N.C. 1989)).

It is clear that based on Borden's testimony, he voluntarily resigned on June 12, 2015. He specifically stated: "I'd been contemplating [leaving] for some time. I made my supervisor aware of it. I also made the manager aware on several occasions that, you know, I wasn't happy with what was going on." Borden admitted that he had been thinking about leaving, and even talked to his superiors about doing so. Thus, Borden voluntarily resigned from his position with the Department of Public Works.

Once Borden's employer established that Borden resigned voluntarily, the burden shifted to Borden to prove that he left his employment for good cause. Actuarial Benefits & Design Corp. v. Virginia Empl. Comm'n, 23 Va. App. 640, 645, 478 S.E.2d 735, 738 (1996). This Court has established a two-part test for determining whether good cause existed for a claimant to voluntarily leave their employment: (1) apply an objective standard to the reasonableness of

- 4 -

the employment dispute; and (2) determine the reasonableness of the employee's efforts to resolve that dispute before leaving the employment. Snyder, 23 Va. App. at 491, 477 S.E.2d at 788. In analyzing these elements, Borden's claim must be viewed from the standpoint of a reasonable employee. Id.

The first part of the test involves examining "[f]actors that . . . are peculiar to the employee and [his] situation." Johnson v. Virginia Empl. Comm'n, 8 Va. App. 441, 451, 382 S.E.2d 476, 481 (1989). In this case, Borden's disputes arose from issues with other employees. These issues included complaints by Borden about how he was assaulted by his supervisor, Polick. They also included other employees' complaints against Borden, relating to Borden's threats directed at his co-worker who then complained about Borden to their supervisor. Borden also claimed that his employer was trying to fire him; however, Borden's superiors stated that Borden received several warnings at work about his behavior, but they did not mention wanting to fire him. In fact, Borden's supervisors gave him numerous chances to change his unprofessional behavior throughout his several years of employment with the Department of Public Works.

In consideration of the second prong of the Snyder test, Borden did not reasonably try to resolve his dispute with his employer before he resigned. In Umber v. Virginia Employment Commission, 12 Va. App. 431, 437, 404 S.E.2d 380, 384 (1991), this Court found that the appellant had exhausted all reasonable alternatives within her company to resolve her complaint of discrimination when she confronted a superior and he failed to respond. This included using the established, designated procedure for addressing employee grievances. Id. In this case, Borden claimed that his hostile work environment caused him to resign. Borden testified about issues at work, but most of the hostility came from issues with other employees, who also filed

- 5 -

complaints against him.  When Borden did complain about issues such as his supervisor, Polick, allegedly assaulting him at work, Borden's employers conducted thorough investigations.

Borden resigned right after receiving a notice of a proposed five-day suspension without pay.  Borden did not attempt to use the avenues available to him to fight the proposed suspension; instead Borden testified that he felt like management was preparing to fire him.  Borden did not provide any evidence to support his claim.  Borden also argued that the warning of a five-day suspension was some sort of retaliation for his past complaints.  However, Borden's employer presented evidence establishing that Borden received the warning for unprofessional behavior.  Borden had received similar warnings in the past, in fact, he received a one-day suspension without pay for failure to comply with the regulations of personal behavior/conduct on November 8, 2013.  As such, no good cause existed for a claimant to voluntarily leave employment.

The Commission's decision that Borden was not due unemployment compensation because he voluntarily quit his job without good cause was supported by the evidence.  Thus, the trial court's decision upholding the Commission's determination is affirmed.

<u>Affirmed</u>.