IN THE MATTER OF: FRANKLIN VANHORN, ROUTE 8, BOX 472, HICKORY, NC 28601; SSN: 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 AND WILLARD J. WHISENANT, 49 33RD AVENUE NW, HICKORY, NC 28601; SSN: 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, APPELLANTS V. BASSETT FURNITURE INDUSTRIES, INC., P. O. BOX 1608, HICKORY, NC 28601 AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, P. O. BOX 25903, RALEIGH, NC 27611; DOCKET NO. 83(G)1191 & 83(G)0925, APPELLEES

No. 8425SC1137

(Filed 20 August 1985)

**Master and Servant § 108.1— unemployment compensation—sale of employer's property—misconduct**

Claimants were discharged for misconduct connected with their work and were thus not entitled to unemployment compensation where the Employment Security Commission found that claimants had participated in a sale of their employer's surplus property without specific approval or authorization by the employer, that claimants never attempted to see that the employer received the proceeds of the sale, and that claimants knew or should have known that converting their employer's property to their own benefit was not permitted.

APPEAL by claimants from *Ferrell, Judge.* Judgment entered 24 May 1984 in Superior Court, CATAWBA County. Heard in the Court of Appeals 14 May 1985.

*Oma H. Hester, Jr., for the claimant appellants.*

*Jane H. Dittmann and T. S. Whitaker, for the respondent appellee, Employment Security Commission of North Carolina.*

*Frank Snyder for respondent appellee, Bassett Furniture Industries, Inc.*

COZORT, Judge.

On 3 September 1982, Howard H. White, Vice President of Bassett Furniture Industries, fired claimants Franklin Vanhorn and Willard Whisenant for converting Bassett property to their own use. When claimants filed for unemployment benefits with the Employment Security Commission, an adjudicator determined that both men were entitled to benefits. Respondent Bassett Industries appealed the adjudicator's determination, and an appeals referee held a separate evidentiary hearing for each claimant on 18 November 1982. The referee determined that claimant Vanhorn qualified for benefits but claimant Whisenant did not. Ap-

peal was made to the Employment Security Commission; Bassett appealed the Vanhorn decision, and Whisenant appealed the decision denying him benefits. On 17 June 1983, the Commission entered findings of fact based upon the transcripts from the evidentiary hearings and memoranda of law concluding that both claimants were disqualified for unemployment benefits. Claimants joined in giving timely notice of appeal to the superior court where the two cases were combined for review. Judgment was entered 24 May 1984 affirming the decisions of the Commission disqualifying both claimants for benefits. On appeal to this Court, we affirm.

There is no dispute about the events leading up to the dismissals. Claimants worked at the Hickory plant of Bassett Industries, Whisenant as plant manager, and Vanhorn as a supervisor of operations. Both men had been working at this particular plant when Bassett acquired it in 1974 and had continued in their positions until they were fired on 3 September 1982.

In February 1982, Bassett purchased a used molder machine and had it shipped directly to the Hickory plant. When the machine was delivered it was accompanied by two boxes of molder knives of a type which, for safety reasons, were not used by Bassett. The driver who delivered the machine refused to return the two boxes of molder knives, and the boxes were set near the back door of the plant to facilitate their removal. Whisenant, as plant manager, directed Vanhorn to get rid of the knives in any way he saw fit.

In late June 1982, Fred Cochran of Drexel Heritage Furnishings, Inc., which had a plant "two doors below" the Bassett plant, learned that Bassett had some molder knives they were not using. He and another Drexel employee went to the Bassett plant and asked Whisenant if they could look at the knives. Vanhorn was told to show the men the boxes of discarded molder knives. Vanhorn and Cochran agreed upon a $200.00 purchase price for the knives. A Drexel employee picked up the knives during regular working hours. Drexel issued a check for $200.00 made out to Vanhorn which was delivered to the business office at the Bassett Hickory plant. The business office gave the check to Whisenant who gave it to Vanhorn. Vanhorn cashed the check and offered some of the proceeds to Whisenant who at first refused and then accepted the offered sum.

In early September 1982, Bassett Vice President White, who was responsible for the Hickory plant among others, learned that some "surplus" molder knives had been sold to Drexel. White traveled from corporate headquarters in Virginia to the Hickory plant, and on 3 September 1982 questioned Vanhorn and Whisenant about the matter. Claimants explained to White that Whisenant had told Vanhorn to "throw the knives in the trash" and the men had considered the knives scrap. The men admitted the knives had been sold to Drexel for $200.00 and that the men had shared the money. White fired the men on the spot.

The claimants' argument before this Court is that the conduct described above did not constitute "misconduct" so as to disqualify them for unemployment benefits. Claimants excepted only to the judgment of the trial court, taking no exceptions to any findings of fact. On appeal from a decision of the Employment Security Commission, the findings of fact made by the Commission are conclusive if they are supported by competent evidence. G.S. 96-15(i). Where no exception is taken to the findings, they are presumed to be supported by the evidence and are binding on appeal. *In re Hagan v. Peden Steel Co.*, 57 N.C. App. 363, 291 S.E. 2d 308 (1982).

The Commission made the following pertinent findings of fact with regard to claimant Whisenant.

2. The claimant was discharged from this job for wilfully and without good cause participating in the sale of surplus employer property (molder knives) for $200. He, the plant manager, was aware of the transaction and subsequently accepted $90 or $95 of it from the supervisor, his subordinate, who arranged it. The molder knives were sold to Drexel Heritage, a neighboring business. As soon as the employer, through its Group Vice President, learned of this transaction, both this claimant and the supervisor were discharged. Before September 3, 1982, this claimant never had attempted to see that the employer received the proceeds from the sale of its property.

3. While the molder knives were considered by the employer as surplus to it since they were not used in its operations, this claimant knew or should have known that converting the employer's property to his personal benefit

was not permitted. He knew the molder knives were the employer's property and value was received from their sale, and has offered nothing to show that the employer had approved or authorized the sale of its property with the proceeds going to employees.

and the following findings with regard to claimant Vanhorn:

2. The claimant was discharged from this job for wilfully and without good cause participating in the sale of surplus employer property (molder knives) for $200. He, a supervisor, received the entire sum and subsequently gave $90 or $95 of it to his supervisor, the plant manager. The molder knives were sold to Drexel Heritage, a neighboring business. As soon as the employer, through its Group Vice President, learned of this transaction, both this claimant and the plant manager were discharged. Before September 3, 1982, this claimant never had attempted to see that the employer received the proceeds from the sale of its property.

3. While the molder knives were considered by the employer as surplus to it since they were not used in its operations and while the plant manager had told this claimant to get rid of them, this claimant knew or should have known that converting the employer's property to his personal benefit was not permitted. He knew the molder knives were the employer's property and value was received from their sale, and has offered nothing to show that the employer had approved or authorized the sale of its property with the proceeds going to employees.

With no exception taken to these findings of fact, the sole question to be considered is whether these findings sustain the Commission's conclusion that the claimants were disqualified from receiving unemployment compensation benefits by virtue of G.S. 96-14, which provides in pertinent part:

An individual shall be disqualified for benefits:

    \* \* \* \*

(2) . . . if it is determined by the Commission that such individual is, at the time such claim is filed, unemployed because he was discharged for misconduct connected with his work.

Misconduct as defined by case law and as codified subsequent to the filing of this case at G.S. 96-14(2) is:

[C]onduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

*See In re Collingsworth*, 17 N.C. App. 340, 194 S.E. 2d 210 (1973).

Claimants argue that their actions were not misconduct and that it was not unusual at the Hickory plant to dispose of surplus or scrap material by giving it to employees. Claimants point to evidence presented at the hearing that unused material and equipment had been given to employees of the plant in the past. They argue that the exchange in question was not conversion because the knives had been given to Vanhorn prior to the sale to Drexel and were his property, not Bassett's.

This Court is bound by the facts as found by the Commission and may not consider the evidence for the purpose of finding additional facts. *See In re Bolden*, 47 N.C. App. 468, 267 S.E. 2d 397 (1980). Here, the Commission found as facts that claimants had participated in a sale of their employer's surplus property without specific approval or authorization by the employer, that claimants never attempted to see that the employer received the proceeds of the sale, and that claimants knew or should have known that converting their employer's property to their own benefit was not permitted. From these findings the Commission logically concluded that claimant's conduct was "misconduct connected with work" as defined by case law and properly decided that claimants were disqualified from unemployment benefits. We hold that the findings of fact adequately support the conclusion and decision of the Commission.

Affirmed.

Judges WELLS and JOHNSON concur.