HENRY L. WILLIAMS v. BURLINGTON INDUSTRIES, INC., AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA

No. 436PA85

(Filed 4 November 1986)

**1. Master and Servant § 111 — Employment Security Commission — decision by deputy commissioner — review by Court of Appeals proper**

The Court of Appeals had authority pursuant to N.C.G.S. § 96-15(h) to review a decision by a deputy commissioner of the Employment Security Commission to remand to the referee who originally heard the case.

**2. Master and Servant § 110 — unemployment compensation — remand by deputy commissioner to referee for further fact finding — propriety**

In a proceeding for unemployment compensation where the deputy commissioner who heard the case remanded for further fact finding, the Court of Appeals erred in concluding that the deputy commissioner had abused his discretion, since the referee found that petitioner was discharged for leaving work early and falsifying time records; the referee also found that petitioner left early because he had finished his work but did not ask permission because he did not want to disturb his supervisor; the referee found that petitioner entered his time before the start of each work day and did not think about correcting the entries; and such findings did not indicate that petitioner's action in leaving early violated any employment rule or whether petitioner's actions with regard to his time records were the result of forgetfulness or intentional wrongdoing.

**3. Master and Servant § 110 — unemployment compensation — findings of fact by referee — sufficiency — employee leaving work early — falsifying time records**

Findings by a referee in a proceeding for unemployment compensation were supported by the evidence under either the "any competent evidence" or the "substantial evidence on the whole record" test, and such findings were sufficient to support the referee's conclusion that petitioner was discharged for misconduct where the findings indicated that petitioner failed to notify his

supervisor that he was leaving before his scheduled quitting time despite his knowledge that he was supposed to do so; petitioner did not have good cause for this failure; petitioner falsified his time records and he was paid by the hour; and these two actions constituted willful or wanton disregard of his employer's interest.

Justices PARKER and BROWNING did not participate in the consideration or decision of this case.

ON discretionary review of a decision of the Court of Appeals, 75 N.C. App. 273, 330 S.E. 2d 657 (1985), reversing a judgment of the Superior Court, SAMPSON County, which affirmed a decision of the Employment Security Commission that claimant was disqualified for unemployment compensation. Heard in the Supreme Court 13 February 1986.

*East Central Community Legal Services, by Reynauld M. Williams, for petitioner-appellee.*

*T. S. Whitaker, Chief Counsel, and Thelma M. Hill, for respondent-appellant Employment Security Commission.*

*Robert H. Stevens, Jr., Assistant General Counsel and Ben Tennille, Associate General Counsel, for respondent-appellant Burlington Industries.*

*Ogletree, Deakins, Nash, Smoak & Stewart, by Stuart M. Vaughan, Jr., and A. Bruce Clarke, for Amicus Curiae North Carolina Associated Industries.*

*Broughton, Wilkins, Webb & Gammon, P.A. by J. Melville Broughton, Jr., for Amicus Curiae North Carolina Textile Manufacturers Association.*

FRYE, Justice.

The parties to this dispute raise several questions on review, all related to the larger question of whether the Court of Appeals erred in vacating the judgment of the Superior Court, Sampson County, which affirmed the decision of the Employment Security Commission to deny petitioner unemployment compensation, and remanding the case to that court for entry of an award of benefits. For the reasons set forth in this opinion, we hold that the Court of Appeals did err.

Petitioner was discharged from his job as a frequency checker with respondent Burlington Industries (hereinafter Bur-

lington) on 13 June 1983. The reasons given him at the time of discharge were that he had left the plant without permission from his supervisor and had also falsified time records. He applied for unemployment compensation. When this was denied, he requested a hearing before an appeals referee. The referee heard testimony from petitioner and from his former supervisor and another representative of Burlington on 25 July 1983. Following the hearing, the referee made findings of fact and concluded that petitioner had been discharged for misconduct as defined by N.C.G.S. § 96-14(2) and accordingly did not qualify for benefits.

Petitioner then appealed to the Commission. After reviewing the evidence, Deputy Commissioner V. Henry Gransee, Jr., vacated the referee's decision and remanded the cause for a new hearing before the same referee. Following this second hearing, the referee concluded anew that petitioner had been discharged for misconduct as defined by N.C.G.S. § 96-14(2). Petitioner again appealed. The deputy commissioner affirmed the referee's decision and adopted it as the Commission's own.

Petitioner then sought judicial review by the Superior Court, Sampson County. The case came on for hearing at the 9 July 1984 Civil Session before Lewis, J., who affirmed the Commission's decision. Petitioner appealed to the Court of Appeals, which reversed on the grounds that the deputy commissioner erred in remanding for a second hearing before the appeals referee. Respondents petitioned this Court for discretionary review of the Court of Appeals' decision. The petition was allowed on 19 September 1985.

I.

[1] Respondents initially contend that the Court of Appeals had no authority to review the deputy commissioner's decision to remand. This contention is clearly incorrect. N.C.G.S. § 96-15(h) (1985) ("Judicial Review") provides:

> Judicial review shall be permitted only after a party claiming to be aggrieved by the decision [of the Employment Security Commission or deputy commissioner] has exhausted his remedies before the Commission . . . and has filed a petition for review . . . . The petition . . . shall explicitly state what exceptions are taken to the decision *or procedure* of the Commission and what relief the petitioner seeks.

(Emphasis added.) Petitioner properly listed the deputy commissioner's remand as an exception in his petition for review by the superior court and further raised it as an assignment of error before the Court of Appeals. The Court of Appeals accordingly did not err in reviewing this decision. N.C. R. App. P. 10.

[2] Respondents further contend that the Court of Appeals applied an incorrect standard in reviewing the deputy commissioner's decision to remand.

N.C.G.S. § 96-15(e) (1985) ("Review by the Commission") provides:

The Commission or Deputy Commissioner may on its own motion affirm, modify, or set aside any decision of an appeals referee on the basis of the evidence previously submitted in such case, or direct the taking of additional evidence . . . .

The statute thus allows the deputy commissioner in his discretion to remand a case for further fact finding. The Court of Appeals concluded that the deputy commissioner in this instance had abused his discretion.

The appeals referee initially found the following facts:

1. Claimant last worked for Burlington Industries, Incorporated on June 10, 1983. From June 12, 1983 until June 18, 1983, claimant has registered for work and continued to report to an employment office of the Commission and has made a claim for benefits in accordance with G.S. 96-15(a) as of the time the Adjudicator issued a determination.

2. Claimant was discharged from this job for leaving work early and without permission and falsifying time records.

3. On June 7, 1983, June 8, 1983, and June 9, 1983, claimant was scheduled to work from 7:00 p.m. to 7:00 a.m. On each of those days claimant left prior to 7:00 a.m. and did so without permission. Claimant left early on those dates because he had completed his work and was tired. Claimant did not request permission because he would have to call his supervisor at his home and claimant did not want to disturb the supervisor.

4. On claimant's time record, claimant entered that he had worked twelve hours on each day, June 7, June 8, June 9, 1983. Claimant had not worked 12 hours. Claimant entered his time before the start of each work day and just didn't think about correcting the entries on the subsequent days.

Based on these facts, the referee concluded that petitioner had been discharged for misconduct as defined by N.C.G.S. § 96-14(2). This statute defines misconduct as

conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to his employer.

N.C.G.S. § 96-14(2) (1985).

The deputy commissioner in his order of remand said:

It is now, therefore, ordered that the undersigned, having reviewed the evidence in the record, does hereby vacate the decision of the Appeals Referee and remand the cause for a new hearing and decision.

It is unclear under which rule the claimant was discharged and exactly what the rule provided. Further, it appears that the three warnings and discharge all occurred on June 11, 1983. For a warning to serve any purpose as to future conduct, it would seem that it would have to be prospective. The Appeals Referee shall make a specific finding whether the claimant forgot to correct his time entries or falsified them.

The burden is upon respondent Burlington Industries to show that petitioner is disqualified from receiving unemployment compensation. *Intercraft Industries Corp. v. Morrison*, 305 N.C. 373, 376, 289 S.E. 2d 357, 359 (1982). The Court of Appeals reasoned that principles applicable to review by the courts should also be applicable to review by the Employment Security Commission. Accordingly, when all "sufficient and necessary findings of ma-

terial fact essential to resolving the issue have been made" and there is thus no need to remand, "any remand would be an abuse of discretion." 75 N.C. App. 273, 277, 330 S.E. 2d 657, 660.[1] The Court of Appeals so concluded because it believed that any other conclusion would unfairly give employers repeated opportunities to meet their burden. *Id.* The court went on to hold that the facts as initially found were sufficient to resolve the issue of whether petitioner was disqualified in petitioner's favor. It accordingly found that the deputy commissioner's remand was improper and an abuse of discretion.

Courts may review the discretionary decisions of administrative agencies for clear or manifest abuse of discretion. *See Pharr v. Garibaldi*, 252 N.C. 803, 115 S.E. 2d 18 (1960). While we do not mean to imply that remands by the Employment Security Commission can never be an abuse of discretion, we find no such abuse in the instant case. We disagree with the opinion of the Court of Appeals that the referee's initial findings were sufficient to resolve the issue.

As previously stated by this Court,

The purpose of the requirement that the court make findings of those specific facts which support its ultimate disposition of the case is to allow a reviewing court to determine from the record whether the judgment — and the legal conclusions which underlie it — represent a correct application of the law. The requirement for appropriately detailed findings is thus not a mere formality or a rule of empty ritual; it is designed instead 'to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system . . . .'

In the absence of such findings, this Court has no means of determining whether the order is adequately supported by competent evidence . . . . It is not enough that there may be evidence in the record sufficient to support findings which *could have been made.* The trial court must itself determine

---

1. Although not cited in its decision in the instant case, our Court of Appeals has held that a superior court judge erred in sending a case back to the Employment Security Commission for further findings when all material facts necessary to resolve the issue had been found. *See Tastee Freeze Cafeteria v. Watson*, 64 N.C. App. 562, 307 S.E. 2d 800 (1983).

what pertinent facts are actually established by the evidence before it, and it is not for an appellate court to determine *de novo* the weight and credibility to be given to evidence disclosed by the record on appeal.

*Coble v. Coble*, 300 N.C. 708, 712-13, 268 S.E. 2d 185, 189 (1980) (citations omitted) (emphasis in original).

The referee's initial findings omitted certain material facts.

The referee found on the one hand that petitioner was fired for leaving work early and without permission, and also that petitioner's job was finished and he did not wish to disturb his supervisor at home at an early hour. The referee did not find on this initial occasion that petitioner's action violated any employment rule, although there was some evidence in the record indicating that such was the case, or any other reason why petitioner's action was unacceptable behavior. Because petitioner's action would be perfectly acceptable in certain employments, these facts *as initially found* do not, *per se*, suggest "misconduct" as contemplated by the statute.

However, the referee found additionally that petitioner was also discharged for falsifying time records. The use of the word "falsify" suggests intentional deception, but this suggestion is neither confirmed nor rebutted by the referee's further finding that petitioner "just didn't think about correcting the entries on the subsequent days." The deputy commissioner could hardly have determined from a review of these findings whether petitioner merely forgot to correct his time entries or whether his omission was intentional. The record as it existed at the time was not sufficiently clear for the deputy commissioner himself to resolve this discrepancy. Petitioner's testimony at the first hearing contained internal inconsistencies and could be interpreted as supporting either conclusion. Because the findings and the record together were thus insufficient to resolve this issue in either party's favor, the deputy commissioner did not abuse his discretion in remanding for a new hearing.

We note that petitioner also argued before the Court of Appeals that the deputy commissioner abused his discretion in remanding for a new hearing before the same appeals referee. Petitioner made no such argument before this Court. This issue is accordingly deemed abandoned.

## II.

[3] Having concluded that the Court of Appeals erred in finding that the deputy commissioner abused his discretion in remanding for a second hearing, we turn now to a review of the deputy commissioner's final decision in order to determine whether the superior court erred in affirming it.

N.C.G.S. § 96-15(i) (1985) provides that when judicial review is sought of decisions of the Commission on unemployment benefits, "the findings of fact by the Commission, if there is evidence to support them and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." After petitioner's second hearing, the appeals referee made new findings of fact and again concluded that petitioner was disqualified from receiving benefits because he had been discharged for misconduct. The deputy commissioner adopted this decision as the Commission's own. Petitioner contends both that certain material findings therein are unsupported by the evidence and that the findings do not support the conclusion reached. Petitioner further urges this Court to adopt the so-called "whole record test" for reviewing decisions of the Employment Security Commission.

Judicial review of the sufficiency of evidence to support findings of fact by an administrative agency is generally under one of three standards in North Carolina: *de novo* review where specifically authorized by statute, "substantial evidence on the whole record," or "any competent evidence." *In re Rogers*, 297 N.C. 48, 61, 253 S.E. 2d 912, 920 (1979). N.C.G.S. § 96-15 does not specify which test should be employed; it merely provides that the Commission's findings shall be conclusive "if there is evidence to support them . . . ." N.C.G.S. § 95-15(i) (1985). Where the word "evidence" appears, and its meaning is not otherwise qualified, "evidence" has been read to mean "substantial evidence." *Id.* at 61, 253 S.E. 2d at 920-21. Moreover we note that the "whole record" test is the test normally preferred. *See N.C. State Bar v. DuMont*, 304 N.C. 627, 286 S.E. 2d 89 (1982).

However, N.C.G.S. § 96-4(m) (1985), which deals primarily with hearings concerning employers' liability for unemployment tax, contains the following provision:

When an exception is made to the facts as found by the Commission, the appeal shall be to the superior court . . . but the

decision or determination of the Commission upon such review in the superior court shall be conclusive and binding as to all questions of fact supported by *any competent evidence*.

(Emphasis added.) This Court applied this section to judicial review of disqualification of claimants in *Employment Security Commission v. Smith*, 235 N.C. 104, 69 S.E. 2d 32 (1952). Petitioner argues that this Court erred in so doing because this section has no relation to the section governing reviews of decisions on claimants' benefits. He accordingly urges the Court to adopt the "whole record" test for reviewing decisions on claimants' benefits and reserve the "any competent evidence" test for cases arising under N.C.G.S. § 96-4(m).

We need not decide this issue in the instant case, however, because we find that the disputed findings of the referee are supported by the evidence under either the "any competent evidence" or the "substantial evidence on the whole record" test. Furthermore, the principal underlying facts in this case are not seriously in dispute.

The appeals referee's second decision (adopted by the deputy commissioner as the decision of the Commission) included the following findings pertinent to this review:

3. Claimant was discharged from this job for leaving work early on three consecutive days without the permission of his supervisor and falsification of company records.

EXCEPTION NO. 18

4. Claimant was employed as a frequency checker on the 11:00 p.m. to 7:00 a.m. shift. On shifts beginning June 6, 7, and 8, 1983, claimant was scheduled to work from 7:00 p.m. to 7:00 a.m. Claimant was scheduled to work his regular 11:00 p.m. to 7:00 a.m. shift on June 9 and 10, 1983.

5. Claimant's supervisor, Lee Shearin, works an 8:00 a.m. to 5:00 p.m. shift and is not normally at the work site during claimant's shift. [Claimant, however, had been instructed to call Mr. Shearin at his home if there were any problems.] Claimant had called Mr. Shearin at his home in the past to report such things as sickness necessitating claimant's early departure and claimant's inability to report for work.

EXCEPTION NO. 19

6. As a routine part of claimant's job, he entered the number of hours worked each day on a frequency check sheet. Based upon claimant's entries on the frequency check sheet, Mr. Shearin reported claimant's hours to payroll so that claimant might be paid. Claimant was paid according to the number of hours worked.

7. On June 7, 8, and 9, 1983, claimant left work, prior to the end of his shift. On each of the three days, claimant left without first receiving or attempting to receive, permission from his supervisor. Claimant left work early because he was tired. [Claimant chose not to call his supervisor, despite his knowledge that he was to do so, because he did not wish to 'bother' his supervisor at that time of day.] [It is found as a fact that claimant did not have good cause for failing to obtain permission to leave early from his supervisor on June 7, 8, and 9, 1983.]

EXCEPTION NO. 20

EXCEPTION NO. 21

8. On the frequency check sheet for the same three-day period, claimant recorded that he worked 12 hours on each of the three days. [Claimant made these entries prior to leaving his job.] [Claimant, however, had several opportunities to correct the false entries, but failed to do so.] Claimant failed to correct the entries because he was in a rush. [It is therefore found as a fact that claimant has failed to show good cause for falsifying company records.] [In view of the fact that claimant had several opportunities to correct the false entries yet failed to do so, it is further found that claimant's falsification of company records was intentional.]

EXCEPTION NO. 22

EXCEPTION NO. 23

EXCEPTION NO. 24

EXCEPTION NO. 25

Finding #3 is clearly supported by the evidence. At the first hearing, there was testimony that where an employee "walked off" of a job, Burlington normally adopted the position that the

employee had quit. However, both of Burlington's representatives at that hearing agreed that the company had not adopted this attitude but had instead discharged petitioner. There was also testimony at both hearings that petitioner could have been discharged for receiving four warnings within a prescribed period. Petitioner had previously received one warning (for a different infraction). He was given three warnings at once on the day he was fired for leaving early without permission on the three days in question (7, 8 and 9 June 1983). Nevertheless, respondent's representative testified repeatedly that petitioner was discharged for the reasons found by the referee, these reasons appear on petitioner's termination record at Burlington, and petitioner stated at his first hearing for unemployment benefits that he was given these reasons upon discharge. Thus, a fair reading of the record indicates that while petitioner could have been discharged for receiving four warnings, he was in fact discharged for his conduct, i.e., leaving work early without permission and falsification of time records.

There was also ample evidence to support the disputed portion of finding #5, that petitioner had been instructed to call his supervisor at home if there were any problems. Both Burlington's representatives and petitioner himself consistently testified to the fact that petitioner was supposed to call his supervisor in that event.

Petitioner took exception to two portions of finding #7. First, that "[c]laimant chose not to call his supervisor, despite his knowledge that he was to do so, because he did not wish to 'bother' his supervisor at that time of day," may be further subdivided into two separate parts, one, that "claimant chose not to call his supervisor . . . because he did not wish to 'bother' his supervisor at that time of day," and, two, that claimant knew he was supposed to call. There is substantial evidence to support both parts.

As to the first, petitioner agreed throughout both hearings that he had not telephoned his supervisor. At the first hearing, in response to the question "Why didn't you call [your supervisor]?" petitioner replied, "Well, it was close to 7 o'clock, and it wouldn't be long before it was time for him to get up . . . ." At the second hearing, petitioner testified in addition that two previous supervisors had reacted negatively to early morning calls. While peti-

tioner did not use the word "bother," the referee's finding well expresses the sense of his testimony.[2]

It is true that petitioner did offer somewhat conflicting testimony at his second hearing, saying that he had left notes for his supervisor to tell him of petitioner's early departure. Nevertheless, in view of the fact that petitioner failed to mention these notes at any previous stage of the claims process, that his supervisor denied receiving even one of them, and that accidental loss of all three would appear unlikely, we cannot say that under either standard of review this portion of the referee's finding was erroneous.

As to the second subdivision, that petitioner knew he was supposed to call his supervisor, Burlington introduced at the second hearing a copy of various posted rules, including the following:

> VISITING OTHER AREAS—LEAVING PLANT PREMISES—Employees, unless on Company business or in the course of their regular work, are not to visit departments other than those in which they are employed, nor to leave the plant premises during scheduled hours of work, without expressed authorization of the immediate supervisor.

Furthermore, at one point during his second hearing, petitioner agreed that he knew he should have communicated with his supervisor.[3]

---

2. Petitioner's attorney contends on appeal that had petitioner called the supervisor, he would have violated another work rule prohibiting employees from making phone calls except in cases of emergency. While the record shows that such a rule exists, petitioner himself never gave this rule as a reason for failing to telephone.

3. Although Burlington has strenuously argued at various levels that this fact is clearly proven, much of its evidence on this point is flawed. At the first hearing, it introduced evidence that petitioner's action was against its rules, that this information is dispensed at an orientation session for new employees, and that various portions of its rules are reviewed at "personalized contact sessions." However, Burlington failed to show that its orientation program was in effect when petitioner was hired thirteen years before, or that this particular rule was reviewed at any personalized contact session where petitioner was present. Petitioner contended at his first hearing that he knew he was supposed to call if there was any *difficulty*, and there was none. At the second hearing, Burlington introduced evidence that petitioner was discharged from Burlington in 1973 for leaving without permission but without any information about the circumstances, and that in 1976 a former

In the second portion of finding #7 to which petitioner excepted, the referee found that petitioner did not have good cause for failing to obtain permission to leave early. Violation of a work rule is not misconduct if the employee's actions were reasonable and were taken with good cause. *Intercraft Industries Corp. v. Morrison,* 305 N.C. 373, 289 S.E. 2d 357. Petitioner contends that "good cause" is a conclusion of law and thus fully reviewable on appeal. This contention is contrary to this Court's recent statement in *Intercraft* that good cause is "a matter for the factfinder, here the Commission, to decide." *Id.* at 377, 289 S.E. 2d at 360.

In the instant case, the facts as found by the referee are essentially that petitioner knew that he was supposed to call his supervisor before leaving early, despite the fact that his task had been completed.[4] His reason was that he did not want to bother the supervisor. The record also shows that according to petitioner, this particular supervisor had never become upset on other occasions when petitioner called to report problems. This evidence tends to support the referee's conclusion.

The only evidence that would suggest a different result is that at the end of the preceding week, on Saturday, 4 June 1983, petitioner's supervisor had told petitioner he could leave when he finished his tasks and he would be paid for the entire eight-hour shift. According to the testimony, petitioner's supervisor was acting under the mistaken belief that workers who were present for more than half of their shift were to be paid for the entire shift. The evidence shows that petitioner's next working day was 6-7 June, and petitioner also left when he had completed his tasks on that and the two succeeding days. Petitioner repeatedly indicated that he could see no difference between the events of Saturday, 4 June, and those of 7, 8, and 9 June. However, we note that on Saturday, 4 June, petitioner left before his scheduled time *with his*

---

supervisor told him to get permission to go to a different area while on a break. Thus the only real evidence that petitioner knew that it was against company rules for him to leave without his supervisor's permission *when all of his work for that day was already completed* was the posted rule and petitioner's own statement at the second hearing.

4. Although the referee did not find as a fact in her second findings that petitioner had completed his tasks, both parties agree that he had done so on the three days in question, and the documentary evidence introduced by Burlington supports this fact.

Williams v. Burlington Industries, Inc.

*supervisor's express permission.* Nothing in the record suggests that the supervisor was giving petitioner implied permission to leave before the appointed hour on future occasions. Therefore, we find that there is substantial evidence to support the referee's finding that petitioner did not have good cause for failing to obtain permission on the days in question.

Petitioner similarly takes exception to four portions of finding #8. First is the referee's finding that "[c]laimant made these entries prior to leaving his job." Petitioner testified that he entered twelve hours on each of the three days in question when he first come on the job. The entries were thus clearly made prior to leaving. Second, the referee found that claimant had several opportunities to correct the incorrect entries. The evidence is uncontroverted that petitioner entered incorrect time figures for each day for three days in succession, that he came again to work that week on a fourth day, and that he finished early on each of these days. Therefore, he clearly had repeated opportunities to correct all three of his incorrect entries. Fourth, the referee found that "[i]n view of the fact that claimant had several opportunities to correct the false entries yet failed to do so, it is further found that claimant's falsification of company records was intentional." Intent may be inferred from the surrounding circumstances. We therefore find that there was substantial evidence to support the first, second and fourth portions of finding #8.

The third portion, that petitioner failed to show good cause for falsifying company records, is also supported by the evidence.[5] Petitioner's own testimony is that on each successive day he did not correct the entries from the previous days because he was in a rush, and the referee so found. In view of the undisputed facts that petitioner had extra time at the end of each succeeding shift, and that the mistake was repeated for three successive days, we believe that the evidence supports this finding.[6]

---

5. We note that the burden of showing that a claimant is disqualified for misconduct as defined by the statute remains on the employer. *See Intercraft Industries Corp. v. Morrison,* 305 N.C. 373, 376, 289 S.E. 2d 357, 359.

6. Another relevant factor should be mentioned at this point. The uncontroverted testimony of both petitioner and his supervisor, a witness for Burlington, about petitioner's leaving early yet being paid for his full shift on Saturday, 4 June, described previously, plus petitioner's apparent feeling that there was no difference between the happenings of that Saturday and those of his next three working days

We must next consider whether the findings as made support the conclusion that petitioner was discharged for misconduct as defined by N.C.G.S. § 96-14(2).

Petitioner contends that the findings are deficient for failure to state what rule petitioner violated. The Court of Appeals held that petitioner was not guilty of misconduct because he had "good faith" cause for his actions, and respondents and amici curiae contend that the Court of Appeals is improperly requiring employers to show intent before an employee may be found to have been discharged for misconduct whereas a finding of negligence is sufficient. Neither party is entirely correct.

Misconduct is defined as "conduct evincing such willful or wanton disregard of an employer's interest" as is found in:

1) *deliberate* violations or disregard of standards of behavior which the employer has the right to expect, or

2) carelessness or negligence *of such degree or recurrence* as:

   a. to manifest equal culpability, wrongful *intent*, or evil *design*, or

   b. to show an *intentional* and substantial disregard of the employer's interests or of the employee's duties.

N.C.G.S. § 96-14(2) (1985) (emphases added). Petitioner's contention is erroneous in that while violation of a specific work rule may amount to such misconduct, *see Intercraft Industries Corp. v.*

---

(ending 7, 8, and 9 June), plus the testimony of Burlington's witness that Burlington had had no problems with petitioner posting incorrect time records before 7 June 1983, plus the fact that petitioner's normal shift was only eight hours instead of twelve, could support a finding that petitioner was genuinely confused about the propriety of his actions and the proper interpretation of Burlington's rules. In such case, his actions might not constitute misconduct. There is, however, evidence that tends to negate a finding that he was confused on this matter. Petitioner's supervisor testified that *he* mistakenly believed that petitioner was entitled to be paid for his entire shift despite leaving early, but neither he nor petitioner ever testified that he told petitioner so. Petitioner never made any claim of entitlement to be paid for the unworked hours, even mistakenly. Furthermore, at his first hearing, he said of the preceding Saturday, "He paid me for eight hours. I only worked six. Now, that's falsification of time, but there's no difference there. He said, 'When you finish, go.'" Petitioner's testimony could be interpreted to mean that he was fully aware that he was not entitled to compensation for his unworked hours.

*Morrison*, 305 N.C. 373, 289 S.E. 2d 357, the statute does not require such a showing. Our Court of Appeals has found misconduct based on conduct alone, without reference to a specific rule. *See, e.g., Hagan v. Peden Steel Co.*, 57 N.C. App. 363, 291 S.E. 2d 308 (1982) (gross insolence). Likewise, respondent errs in that while one of the examples of willful or wanton disregard of an employer's interest is negligence, the statute requires that more be shown than simple negligence. An employee's intent is clearly a relevant consideration.

The Court of Appeals did err in one respect, however. This Court has said that violation of a work rule is not misconduct if the evidence shows that the employee's actions were reasonable and were taken with good cause, which is further defined as a reason which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work. *See Intercraft Industries Corp. v. Morrison*, 305 N.C. 373, 375-76, 289 S.E. 2d 357, 359. Accordingly, when the Court of Appeals held that petitioner had a "good faith" cause for violating a work rule, it was technically applying an incorrect standard. Although an employee's intentions are certainly relevant in either event, the correct standard is the objective "good cause" rather than the subjective "good faith cause."

Finally, we believe that the facts as found will support the referee's conclusion that petitioner was discharged for misconduct. The findings show two bases for such a conclusion. First, petitioner failed to notify his supervisor that he was leaving before his scheduled quitting time despite his knowledge that he was supposed to do so. The referee found that petitioner did not have good cause for this failure. Second, he repeatedly falsified his time records, and he was paid by the hour. We agree that the two, taken together, constitute "willful or wanton disregard" of his employer's interest. *Cf. In re Butler*, 60 N.C. App. 563, 299 S.E. 2d 672, *cert. denied*, 308 N.C. 191, 302 S.E. 2d 242 (1983) (failure without good cause to notify employer of an excusable absence, such as illness, negates any good cause for the absence itself), and *In re Williams*, 60 N.C. App. 572, 299 S.E. 2d 668, *cert. denied*, 308 N.C. 544, 304 S.E. 2d 243 (1983) (employee's alteration of production records, resulting in overpayment to her, was sufficient to support a conclusion of misconduct).

In summation, we hold that the Court of Appeals erred in its decision that the deputy commissioner abused his discretion in remanding for further findings, and we find no error in the decision of the Superior Court, Sampson County. For all the reasons discussed in this opinion, we reverse the decision of the Court of Appeals.

Reversed.

Justices PARKER and BROWNING did not participate in the consideration or decision of this case.