CHRISTINA M. BINNEY, Petitioner v. BANNER THERAPY PRODUCTS and EMPLOY-
MENT SECURITY COMMISSION OF NORTH CAROLINA, Respondents

No. COA05-916

(Filed 18 July 2006)

**1. Unemployment Compensation— employment-related misconduct—actions reasonable and taken with good cause**

A de novo review revealed that the superior court erred by affirming the Employment Security Commission's decision to deny unemployment benefits to petitioner under N.C.G.S. § 96-14(2) based on alleged employment-related misconduct, including her removal of a hard drive from the computer supplied

**BINNEY v. BANNER THERAPY PRODS.**

[178 N.C. App. 417 (2006)]

to her by respondent company and assertion of a personal copyright interest in the company's catalogs and website, and the case is reversed and remanded to the Commission for additional proceedings not inconsistent with the Court of Appeals' decision, because: (1) an employee's behavior will not be construed as misconduct within the meaning of N.C.G.S. § 96-14(2) if the evidence shows that the actions of the employee were reasonable and were taken with good cause; (2) petitioner's supervisor conceded that there was no formal policy that prohibited petitioner from taking the hard drive off the premises, it was uncontested that petitioner removed the hard drive so that she could prepare for a meeting with a client, another witness who also worked for the company testified that under the same circumstances he may have also removed the hard drive, petitioner was the employee who maintained the company's computers, and there was no evidence that petitioner's conduct was unreasonable or undertaken in bad faith; and (3) there was no evidence that petitioner's assertions of personal copyright interests either inconvenienced or jeopardized the company's ability to operate, the record does not show that petitioner's reliance on federal statutory copyright protections based on her own research was unreasonable or was taken in bad faith, and the record does not show any evidence that petitioner did not genuinely believe that she owned a copyright interest in the company's catalogs and website or any evidence that petitioner intended to use her personal assertions of copyright for any purpose which was detrimental to the company.

**2. Administrative Law— judicial review of agency decision— petition sufficient to challenge findings of fact**

The superior court did not err by concluding that the petition for judicial review was sufficient to challenge the Employment Security Commission's (ESC) findings of fact, because: (1) the petition stated petitioner was challenging the ESC's findings of fact on the grounds that they were not supported with competent record evidence and were inconsistent with applicable law; and (2) given the facts and circumstances of the instant case, the petition was sufficient to permit judicial review.

Judge HUNTER concurring in part and dissenting in part.

Appeal by petitioner from judgment entered 17 November 2004 by Judge James L. Baker, Jr., in Buncombe County Superior Court. Heard in the Court of Appeals 15 March 2006.

*Ferikes & Bleynat, PLLC, by Edward L. Bleynat, Jr.; and Evans & Rice, PLLC, by Susan L. Evans, for petitioner-appellant.*

*Acting Chief Counsel David L. Clegg, by Sharon A. Johnston, for the Employment Security Commission of North Carolina, respondent-appellee.*

McCULLOUGH, Judge.

Christina Binney (Binney) appeals from a superior court order affirming the decision of the North Carolina Employment Security Commission (ESC), which denied Binney's claim for unemployment benefits. We affirm in part, reverse in part, and remand.

### Facts

On 5 April 2003, Binney was discharged from her employment with Banner Therapy Products (Banner) because she included a statement of personal copyright interest on the catalogs and web site that she had designed for Banner and because she removed the hard drive of the computer supplied to her by the company. Binney thereafter filed a claim for unemployment benefits, which was contested by Banner. Banner asserted that Binney was disqualified from receiving benefits because she was discharged for misconduct connected with her work.

At a hearing before the ESC, the evidence tended to show the following: Banner is a company in the business of selling rehabilitation and other health care products. The company was founded by Binney and two other people, Sandor Sharp (Sharp) and Thomas Maroney (Maroney). Initially, the three co-founders each owned an equal one-third share of the company. Maroney later came to be the majority shareholder, owning eighty percent of the company.

Binney first performed work for Banner in the summer of 1996, before the company was incorporated, when she created the company's first catalog. In the course of creating the catalog, Binney compiled data for all the products to be sold, wrote and edited text, and designed the layout.

When the company was incorporated in December 1996, Binney was named treasurer. At a hearing before the ESC, Binney claimed that she also held the title of Vice President of Marketing and Computer Technology. Thomas Maroney disputed this claim. According to Maroney, Binney gave herself the title, though he admitted that

**BINNEY v. BANNER THERAPY PRODS.**

[178 N.C. App. 417 (2006)]

she was neither told to refrain from using the title, nor advised that the title was improper in any way. Further, it is undisputed that Binney was the individual with primary responsibility for Banner's computers and that she was responsible for designing the company's catalog. When asked to describe Binney's title, Maroney stated, "I think she held herself as vice president in charge of marketing and computer technology. . . . That's the title that she had. . . . It was never officially voted on, but that's the title that she had and that's the position she worked at."

Banner's first catalog was distributed in 1997. This catalog did not bear any copyright information. All subsequent catalogs indicated that Binney had a copyright interest. Binney asserted that these later catalogs were derivative works of the original catalog that she produced.

Binney was also responsible for designing and maintaining Banner's internet web site. When designing the web site, Binney included a statement which indicated that she had a copyright interest in the material on the web site.

Binney did not consult an attorney for advice as to whether she owned copyright interests in the catalogs and the web site until after her employment was terminated. Her assertion of such interests were premised upon her own research and analysis of federal copyright law.

On 20 March 2003, Maroney and Sharp came into Binney's office, at which point Maroney confronted her about the copyright assertions. Binney responded by explaining her belief that she owned a copyright interest in the catalogs and web site because she had worked on the first catalog prior to becoming an employee of the company and the subsequent catalogs and web site were derivatives of the first catalog.

On 4 April 2003, Binney was asked to make an immediate transfer with respect to certain of Banner's accounts payable records. Though Binney generally performed this task on a monthly basis, this request was unusual because such transfers were not usually made so early in the month and because she had never been asked before to make an early transfer.

As Binney was preparing to leave work on the afternoon of Friday, 4 April 2003, a Banner customer, Tom Blexrod, called to request a meeting with Binney on the following Monday. Binney

**BINNEY v. BANNER THERAPY PRODS.**

[178 N.C. App. 417 (2006)]

decided to take her computer's hard drive home with her so she could work on Blexrod's account and be prepared for the Monday meeting, rather than spend a considerably longer amount of time transferring the necessary information to disk. Binney had a compatible computer at home that would accommodate her work computer's hard drive, and she had, on several occasions, taken work home for the night in this manner.

Banner did not have a company policy about taking such work equipment home. Indeed, an employee in Banner's computer department, Jeremy King, testified that he might have taken the hard drive home had he been in Binney's situation. There was no evidence that Binney misused or attempted to misuse the data on the hard drive. Further, there was no evidence that anyone needed the hard drive over the weekend, or that Binney was not planning to return it on Monday.

On 5 April 2003, before Binney could return to work, she received a voicemail from Maroney informing her she was no longer employed at Banner and forbidding her to return to the company.

An ESC adjudicator denied Binney's claim for unemployment benefits, and this decision was affirmed by an ESC appeals referee and subsequently by the ESC Chairman. The ESC determined that Binney was disqualified from receiving benefits because she was discharged for the following incidents of employment-related misconduct: (1) the assertion of a personal copyright interest in Banner's catalogs and web site, and (2) the unauthorized removal of a hard drive from the computer supplied to her by Banner.

Binney petitioned the Buncombe County Superior Court for judicial review of the ESC's decision. The superior court affirmed. Binney now appeals to this Court.

## Legal Discussion

### I.

[1] In her sole argument on appeal, Binney contends that the superior court erroneously affirmed the decision of the ESC to disqualify her from receiving unemployment benefits, under section 96-14(2) of the General Statutes, for being discharged due to misconduct connected with her work. We hold that the ESC's determinations with respect to each ground for disqualification were erroneous, such that the superior court erred by affirming the decision of the ESC.

Our standard of review is governed by the following principles: A party claiming to be aggrieved by a decision of the ESC may "file[] a petition for review in the superior court of the county in which he resides or has his principal place of business." N.C. Gen. Stat. § 96-15(h) (2005). "The legislature, in granting this jurisdiction to the superior court, intended for the superior court to function as an appellate court." *In re Enoch*, 36 N.C. App. 255, 256, 243 S.E.2d 388, 389 (1978). "An appeal may be taken from the judgment of the superior court, as provided in civil cases." N.C. Gen. Stat. § 96-15(i) (2005). The same standard of review applies in the superior court and in the appellate division: "[T]he findings of fact by the [ESC], if there is any competent evidence to support them and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." *Id.* Accordingly, this Court, like the superior court, will only review a decision by the ESC to determine " 'whether the facts found by the Commission are supported by competent evidence and, if so, whether the findings support the conclusions of law.' " *RECO Transportation, Inc. v. Employment Security Comm.*, 81 N.C. App. 415, 418, 344 S.E.2d 294, 296, *disc. review denied*, 318 N.C. 509, 349 S.E.2d 865 (1986) (citation omitted).

"Ordinarily a claimant is presumed to be entitled to benefits under the Unemployment Compensation Act. The employer bears the burden of rebutting this presumption by showing circumstances which disqualify the claimant." *Williams v. Davie County*, 120 N.C. App. 160, 164, 461 S.E.2d 25, 28 (1995) (citations omitted). One ground for disqualification is a misconduct-related discharge, which is governed, as follows, by section 96-14(2) of the North Carolina General Statutes:

[An individual shall be disqualified for unemployment benefits] [f]or the duration of his unemployment beginning with the first day of the first week after the disqualifying act occurs with respect to which week an individual files a claim for benefits if it is determined by the [ESC] that such individual is, at the time such claim is filed, unemployed because he was discharged for misconduct connected with his work. Misconduct connected with the work is defined as conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an

intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

N.C. Gen. Stat. § 96-14(2) (2005).

Discharge for employment-related misconduct may exist as a ground for denying unemployment benefits notwithstanding the fact that the fired employee has not violated a specific work rule if the conduct resulting in termination was unreasonable or taken in bad faith. *Williams v. Burlington Industries, Inc.,* 318 N.C. 441, 455-56, 349 S.E.2d 842, 851 (1986). For example, our courts have held that, in the absence of a specific rule which was contravened, an employee could be disqualified from benefits for misconduct resulting in discharge where the employee, *inter alia,* failed to notify his supervisor that he was leaving early despite his knowledge that he was supposed to do so, and repeatedly falsified his time records when being paid by the hour, *id.* at 456, 349 S.E.2d at 851; sold the employer's property without permission, *In re Vanhorn v. Bassett Furniture Ind.,* 76 N.C. App. 377, 381, 333 S.E.2d 309, 311-12 (1985); failed to file a state income tax return despite being employed as a collector of delinquent taxes, *In re Gregory v. N.C. Dept. of Revenue,* 93 N.C. App. 785, 785, 379 S.E.2d 51, 51 (1989); or got into a fight at work, *Yelverton v. Kemp Furniture Industries, Inc.,* 51 N.C. App. 215, 219, 275 S.E.2d 553, 555 (1981).

However, an employee's behavior "will not be construed as misconduct within the meaning of [section] 96-14(2), if the evidence shows that the actions of the employee were reasonable and were taken with good cause." *In re Helmandollar v. M.A.N. Truck & Bus Corp.,* 74 N.C. App. 314, 316, 328 S.E.2d 43, 44 (1985) (citing *Intercraft Industries Corp. v. Morrison,* 305 N.C. 373, 289 S.E.2d 357 (1982). "Good cause is a reason which would be deemed by reasonable men and women as valid and not indicative of an unwillingness to work." *Id.* (citing *In re Watson,* 273 N.C. 629, 161 S.E.2d 1 (1968)).

Thus, our Courts have declined to rule that an employee was necessarily disqualified from receipt of unemployment benefits because of misconduct-related discharge where he, *e.g.,* was merely inefficient or unable to perform well, *State ex rel. Employment Sec. Com. v. Smith,* 235 N.C. 104, 106, 69 S.E.2d 32, 33 (1952); or missed work because of an inability to find child care, *Intercraft,* 305 N.C. at 376-77, 289 S.E.2d at 359-60; or failed to report to a supervisor's office to discuss an unimportant matter under circumstances where the supervisor had repeatedly summoned the discharged employee to

discuss trivial items, and the employee was attempting to finish work on his desk and was available by telephone, *Umstead v. Employment Security Commission*, 75 N.C. App. 538, 539-41, 331 S.E.2d 218 (1985); or rested during working hours because of faintness brought on by influenza but remained available to help as needed so that the employer's business did not suffer, *Baxter v. Bowman Gray School of Medicine*, 87 N.C. App. 409, 410-11, 361 S.E.2d 109, 109-10 (1987).

### A.

We first address whether the Commission erred by finding and concluding that Binney committed employment-related misconduct by removing the hard drive from her work computer without authorization. In its decision, the Commission found as a fact that

> [o]n April 4, 2003, the employer learned that [Binney] had removed the hard drive from the computer assigned to [her] by the employer. The employer did not authorize the claimant to remove the hard drive.

The Commission concluded that Binney's "unauthorized removal of the hard drive of an employer['s] computer[] showed a deliberate disregard of the standards of behavior that the employer had a right to expect of [her]" such that "she was discharged for misconduct connected with [her] work."

The evidence before the Commission tended to show that Binney was a part-owner of Banner and that she held herself out as the Vice President of Marketing and Computer Technology for Banner. Her superior, Thomas Maroney, was equivocal as to whether she in fact held this title; however, it was undisputed that Binney was the individual who was primarily responsible for Banner's computer equipment. Maroney conceded that there was no formal policy that prohibited Binney from taking the hard drive off the premises. It is likewise uncontested that Binney removed the hard drive so that she could prepare for a meeting with a client, and a witness called by Maroney testified that, under the same circumstances, he may have also removed the hard drive. There was no evidence that Binney removed the hard drive for some improper purpose or that the removal of the hard drive either inconvenienced or jeopardized Banner's ability to operate.

The dissent maintains that Binney engaged in misconduct by removing the hard drive. This conclusion fails to take into account the uncontradicted evidence that, regardless of title, Binney was the

employee who maintained the company's computers. Having the authority to authorize maintenance of the computers, to oversee their operation and preserve corporate records, she believed she had the obvious authority to remove the hard drive. It is clear that an employee who has the apparent authority to remove the hard drive cannot be fired for having exercised her discretion to do just that. Further, unless her actions are unreasonable, she cannot be said to have engaged in misconduct. *See Williams v. Burlington Industries, Inc.*, 318 N.C. 441, 349 S.E.2d 842.

Thus, even if Binney was not expressly authorized to remove the hard drive from her work computer, there was no evidence that her conduct in doing so was unreasonable or was undertaken in bad faith. Banner failed to offer any competent evidence to meet its burden of proving that Binney should be disqualified from receiving benefits because of misconduct-related discharge stemming from the removal of the hard drive. The Commission erred by reaching contrary findings and conclusions, and the superior court erred by affirming the Commission concerning this ground for disqualification.

The dissent further maintains that in reaching this result, we are substituting our judgment for that of the Commission. That is not correct. The issue of whether competent evidence is contained in the record is a matter of law and is reviewable *de novo. State ex rel. Long v. ILA Corp.*, 132 N.C. App. 587, 591, 513 S.E.2d 812, 816 (1999).

The finding of fact at issue has been set forth previously and found that the "employer did not authorize the claimant to remove the hard drive." That finding lacks any support as the employer admitted that the company had no policy at all. The President also admitted that the claimant was the Vice President for Computer Technology. Thus, for her removal of the hard drive to warrant loss of benefits, her act would have to be so unreasonable as to constitute a deliberate disregard of standards of behavior that the employer had the right to expect. As noted in the *Helmandollar* case, and others cited earlier, the determination of whether the evidence of record supports the Commission's determination is also reviewed by this Court *de novo.*

## B.

We next address whether the Commission erred by finding and concluding that Binney committed employment-related misconduct

by asserting a personal copyright interest in Banner's catalogs and web site. In its decision, the Commission found the following facts:

4. The claimant was an officer of the employer corporation at the time it was formed.

5. The claimant was responsible for the production and distribution of the employer's product catalog. The first of these catalogs was produced in mid-1997.

6. In 2001, the claimant created an internet web site for the employer.

7. On or about March 15, 2003, Thomas Maroney . . . discovered that the employer's web site contained the following statement: "Copyright © 2001, Christine Marie Binney, All Rights Reserved." The employer had not authorized the claimant to include such a statement on the web site.

8. The employer then discovered that the 1997, 1998/1999, 2000, 2001, 2002, and 2003 catalogs, all of which were produced by the claimant in the performance of her job, contained similar statements that asserted that the claimant had a copyright interest in the catalogs. The employer had not authorized the claimant to include such a statement in the catalogs.

9. The employer confronted the claimant concerning her copyright assertions. The claimant advised the employer that she had a copyright interest in the catalogs and web site; however, the claimant did not seek legal advice concerning her copyright interests prior to her discharge from employment.

The Commission concluded that Binney's "assertion of a personal copyright interest in the employer's catalogs and web site . . . showed a deliberate disregard of the standards of behavior that the employer had a right to expect of [her]" such that she "was discharged for misconduct connected with [her] work."

The evidence before the Commission tended to show that Binney conducted her own research of copyright law and concluded that she owned a copyright interest in the first catalog unless it was a "work-for-hire" compilation or she agreed that only Banner would hold the copyright. Binney determined that she did own such an interest in the first catalog, which was produced and distributed by Banner in 1997,

because she actually compiled it in 1996, prior to the time that she was actually an employee of the company. Binney's assertions of copyright interests in subsequent catalogs and in the company web site were premised upon her determination that these items constituted "derivative works" under copyright law. There was no evidence that Binney's assertions of personal copyright interests either inconvenienced or jeopardized Banner's ability to operate.

Federal statutory copyright protection " 'is secured automatically when a work is created, and is not lost when the work is published, even if the copyright notice is omitted entirely.' " *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 193 (2d Cir. 1985) (quoting H. Rep. No. 1476, 94th Cong., 2d Sess. 147).

> A work is "created" when it is fixed in a copy or phonorecord for the first time; where a work is prepared over a period of time, the portion of it that has been fixed at any particular time constitutes the work as of that time, and where the work has been prepared in different versions, each version constitutes a separate work.

17 U.S.C. § 101 (2005). "Copyright in a work . . . vests initially in the author or authors of the work. The authors of a joint work are co-owners of copyright in the work." *Id.* § 201(a). "In the case of a work made for hire, the employer . . . is considered the author . . . , and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." *Id.* § 201(b). Copyright subsists not only in original works of authorship, *id.* § 102(a), but also in "derivative works." *Id.* § 103(a). A derivative work is "a work based upon one or more pre[-]existing works." *Id.* at § 101.

We make no comment as to whether, under the foregoing federal authorities, Binney actually owned any copyright interests in Banner's catalogs and web site. However, we note that the record is bereft of any indication that Binney's reliance on these authorities was unreasonable or was taken in bad faith. Further, the record is bereft of any evidence that Binney did not genuinely believe that she owned a copyright interest in Banner's catalogs and web site, or any evidence that Binney intended to use her personal assertions of copyright for any purpose which was detrimental to Banner.

Thus, even if Binney was not expressly authorized to include a personal copyright statement on the catalogs or web site, Banner necessarily failed to meet its burden of proving that Binney should be

disqualified from receiving benefits because of misconduct-related discharge stemming from her assertions of copyright. The Commission erred by reaching contrary findings and conclusions, and the superior court erred by affirming the Commission concerning this ground for disqualification.

## II.

[2] By a cross-assignment of error, the Commission argues that the superior court erred by concluding that Binney's petition for judicial review was sufficient to challenge the Commission's findings of fact. In making this argument, the Commission cites to section 96-15(h) of the General Statutes, which states that a petition for judicial review "shall explicitly state what exceptions are taken to the decision or procedure of the Commission and what relief the petitioner seeks." N.C. Gen. Stat. § 96-15(h) (2005).

In the instant case, Binney's petition for superior court review stated that she was challenging the ESC's findings of fact on the grounds that they were not supported with competent record evidence and were inconsistent with applicable law. Given the facts and circumstances of the instant case, we hold that Binney's petition was sufficient to permit judicial review of the ESC's findings.

The cross-assignment of error is overruled.

### Conclusion

The superior court order affirming the Commission's decision to deny unemployment benefits to Binney is reversed, and this matter is remanded. On remand, the superior court shall enter an order which reverses the Commission's decision, and remand this case to the Commission for additional proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded.

Judge TYSON concurs.

Judge HUNTER concurs in part and dissents in part by separate opinion.

HUNTER, Judge, concurring in part and dissenting in part.

I concur with Section II of the majority opinion overruling the ESC's cross-assignment of error. However, as I conclude the trial

**BINNEY v. BANNER THERAPY PRODS.**

[178 N.C. App. 417 (2006)]

court correctly determined that the decision of the ESC is supported by competent evidence and proper findings of fact, which in turn support the conclusions of law, I respectfully dissent from the remainder of the opinion.

Petitioner was discharged from her employment for misconduct. Misconduct connected with the work is defined as

conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violations or *disregard of standards of behavior which the employer has the right to expect of his employee*, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

N.C. Gen. Stat. § 96-14(2) (2005) (emphasis added). The ESC found that petitioner "had removed the hard drive from the computer assigned to [petitioner] by the employer. The employer did not authorize [petitioner] to remove the hard drive." The ESC concluded that petitioner's "unauthorized removal of the hard drive of an employer computer[] showed a deliberate disregard of the standards of behavior that the employer had a right to expect of [petitioner]." The majority concludes there was insufficient evidence to support this conclusion. I disagree.

The majority asserts that "[t]here was no evidence that . . . the removal of the hard drive either inconvenienced or jeopardized Banner's ability to operate." This assertion is unsupported by the record. Petitioner's superior, Thomas Maroney ("Maroney") testified regarding the reaction of the company's computer consultant when he learned of petitioner's removal of the hard drive. He stated, "my God, if she drops it, if it falls, she's in an accident, all the [company] records for the past seven years are gone." According to Maroney, the hard drive contained "all the information about the Corporation—all of our customers are on there, our billing was on there, all of our customer lists were on there. Everything that we had gathered over all of the years was on the hard drive." Maroney stated that, because of petitioner's removal of the hard drive, "all the prior information that was on the computer" was gone and that "Banner Therapy, basically, was out of business as of that time, without the hard drive." When the company discovered that the hard drive was missing, a computer consultant worked for ten to eleven hours, costing the

company a "high price to get [the] system operating again so it could work on Monday morning." Jeremy King, a computer technician employed by Banner, testified that the hard drive was "critical" to the company, and that its removal "caused us to waste a lot of time . . . trying to . . . get into our accounts[.]" This evidence directly contradicts the majority's assertion that "[t]here was no evidence that . . . the removal of the hard drive either inconvenienced or jeopardized Banner's ability to operate."

The majority concludes that "even if Binney was not expressly authorized to remove the hard drive from her work computer, there was no evidence that her conduct in doing so was unreasonable or was undertaken in bad faith." Again, I must disagree. The evidence showed that removal of the hard drive was patently unreasonable. Respondent submitted uncontradicted evidence that petitioner physically removed the internal hard drive from her employer's computer without authorization. King testified that such removal of the hard drive was not recommended, and that petitioner could have easily achieved the same result by either copying needed files onto computer discs or copying the hard drive. In addition to Maroney's testimony regarding the potentially disastrous consequences of petitioner's actions in removing the hard drive and the hardship she caused to the company, Maroney testified that there "was never any authorization by anyone to take any computer hard drive . . . off the premises. It was never authorized, it was never discussed, and it would never have been permitted." King testified that he would have never removed a hard drive from a company computer without authorization. This testimony underscores the obvious disregard by petitioner of well-established workplace behavioral norms regarding employer-owned computers and computer technology. In fact, the unauthorized removal of a hard drive from an employer's computer is a criminal act under our General Statutes. *See* N.C. Gen. Stat. § 14-455(a) (2005); *State v. Johnston*, 173 N.C. App. 334, 340-41, 618 S.E.2d 807, 811 (2005) (concluding that the trial court did not err in denying the defendant's motion to dismiss the charge of violating N.C. Gen. Stat. § 14-455 where the evidence showed she deliberately removed software from her employer's computer without authorization, resulting in loss of data stored on the hard drive). As such, respondent submitted competent evidence that petitioner's conduct in removing the hard drive without authorization was unreasonable and supports the ESC's determination that petitioner exhibited a "deliberate disregard of the standards of behavior that the employer had a right to expect of [her]." *See Lynch v. PPG Industries*, 105 N.C.

App. 223, 225, 412 S.E.2d 163, 165 (1992). By disregarding the competent evidence in support of the ESC's decision, the majority violates our well-established standard of review and places itself in the role of fact-finder. *In re Graves v. Culp, Inc.*, 166 N.C. App. 748, 750, 603 S.E.2d 829, 830 (2004) ("[t]he [ESC] will be upheld if there is any competent evidence to support its findings").

The majority concludes that because petitioner had the authority to maintain the company computers, she had the apparent authority to remove the hard drive. This conclusion disregards this Court's limited role on appeal. First, the ESC expressly found that petitioner was not authorized to remove the hard drive. There was substantial evidence to support this finding. We are therefore bound by such a finding. *See id.* (stating that, in the absence of fraud, the ESC's findings are conclusive where there is any competent evidence to support them, and the jurisdiction of the court is confined to questions of law). The majority, however, ignores our standard of review and finds its own facts to support its conclusion that petitioner was authorized to remove the hard drive. Second, there is a vast degree of difference between having authorization to *maintain* a computer and having authorization to *physically remove the internal hard drive of a computer containing a company's entire database and take it off-site.* The ESC found and concluded that this action, which arguably violated N.C. Gen. Stat. § 14-455(a), demonstrated a deliberate disregard of the standards of behavior that petitioner's employer had a right to expect of her. The majority's conclusion to the contrary improperly attempts to substitute its own view for that of the ESC.

I conclude that the ESC's determination regarding petitioner's misconduct arising from her unauthorized removal of her employer's hard drive is supported by the evidence and the findings of fact and sustains its decision to deny her unemployment benefits. As such, I need not address the ESC's second ground for misconduct, that of petitioner's unauthorized assertion of a personal copyright interest in the company catalog. Thus, the trial court properly affirmed the decision of the ESC, and I would uphold the trial court.